**UNITED STATES of America,**

v.

**Tommy WALKER, Gary Miller, Raymond Cobb, Cynthia Chaney, Prentis Lindsey, Kevin Watson aka "Archie Hooks", Henry O. Felton aka "Guess", Andre Galloway aka "Gap", Lorraine Howard, Melvina Bennett, George Belgrove, Gregory Leon Whitehurst, David Kyles, and Jorge Pasqual, Defendants.**

No. 95–CR–101–ALL.

United States District Court,
N.D. New York.

April 10, 1996.

Salvatore J. Piemonte, Syracuse, New York, for Defendant Walker.

John P. Clinton, Jamesville, New York, for Defendant Miller.

Thomas F. Shannon, Syracuse, New York, for Defendant Cobb.

Robert G. Wells, Syracuse, New York, for Defendant Chaney.

William D. Walsh, Syracuse, New York, for Defendant Lindsey.

Frank J. Vavonese, Syracuse, New York, for Defendant Watson.

James H. Medcraf, Syracuse, New York, for Defendant Felton.

Hunt, O'Rourke Law Firm (Frederick H. O'Rourke, of counsel), Syracuse, New York, for Defendant Galloway.

Richard D. Priest, Syracuse, New York, for Defendant Howard.

Lisa A. Peebles, Syracuse, New York, for Defendant Bennett.

George P. Alessio, Syracuse, New York, for Defendant Belgrove.

John F. Laidlaw, Syracuse, New York, for Defendant Whitehurst.

Bruce R. Bryan, Syracuse, New York, for Defendant Kyles.

Thomas J. Maroney, United States Attorney, Northern District of New York (Richard R. Southwick, Assistant U.S. Attorney, of counsel), Syracuse, New York, for U.S.

## MEMORANDUM–DECISION
## AND ORDER

MUNSON, Senior District Judge.

Presently before the court are defendants Miller, Lindsey, Watson, Felton, Cobb, Chaney, Howard and Belgrove's criminal omnibus motions, which number well over 150 individual motions.[1] In the second superseding indictment containing 27 counts, each of the defendants are charged with, inter alia, conspiracy to possess with intent to distribute cocaine, cocaine base, marijuana, and methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Oct. 19, 1995 Second Superseding Indictment, Document ("Doc.") 218. Several defendants are charged with engaging in a Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848(a) and (c), and 18 U.S.C. § 2. *Id.* The court heard oral argument on March 1, 1995 at Syracuse, New York. The following constitutes the court's Memorandum–Decision and Order ("MDO") with regard to the instant motions.

## BACKGROUND [2]

Defendants Tommy Walker and Prentis Lindsey are named in the first count of the indictment which alleges that they operated a "Continuing Criminal Enterprise" in that they supervised the distribution of drugs in Utica, Rome and Auburn, New York, in violation of 21 U.S.C. § 848(a) and (c). The second count of the indictment charges defendants Lindsey and Walker along with all of their named codefendants with conspiring to distribute and possess with the intent to distribute controlled substances including cocaine, cocaine base, methamphetamine, and marijuana between 1991 and March 1995, in violation of 21 U.S.C. §§ 841 and 846.

Counts 3, 4, and 5 refer to firearm possession and sales by Tommy Walker in Utica, New York. Counts 7 through 12 involve undercover purchases of drugs from defendant Walker. Counts 13 and 14 pertains to drugs seized from a vehicle that was occupied by defendants David Kyles and Gregory Leon Whitehurst. Count 15 refers to drugs seized from a vehicle used by defendant Kevin Watson in Auburn, New York. Counts 16 through 19 pertain to drugs and weapons seized from a residence in Utica, New York, pursuant to a warrant to search the home of defendant Walker and defendant Tracey Blackwell. Defendant Gary Miller was also present when the warrant was executed. Counts 20 through 25 refer to weapons seized pursuant to a warrant to search the home of Cynthia Chaney and Raymond Cobb in Utica, New York. Count 26 charges defendants Walker and Lindsey with conspiracy to possess and deal in firearms. Lastly, count 27 is a criminal forfeiture brought pursuant to 21 U.S.C. § 853, seeking forfeiture of illegally obtained assets in the amount of approximately $185,000.

## DISCUSSION

### I. Bill of Particulars

■■■ Defendants request a bill of particulars specifying items, too numerous to list here, pertaining to the crimes that defendants allegedly committed. Whether to grant a motion for a bill of particulars lies within the sound discretion of the court. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990) (citing *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir.1984)); Fed. R.Crim.P. 7(f). A bill of particulars serves to "apprise a defendant of the nature of the charges against him, so that he can adequately prepare a defense, avoid prejudicial surprise at trial, and plead double jeopardy in that or any subsequent related action." *United States v. Greater Syracuse Bd. of Realtors, Inc.*, 438 F.Supp. 376, 379 (N.D.N.Y.1977) (Munson, J.); *see also United States v. Feola*, 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989) (citations omitted). If a defendant is supplied with adequate information to prepare a defense, then the court may deny the motion. *Id.* A bill of particulars is not to be used as a general investigative tool for the defendant, or a device through which to learn the government's evidence or legal theories

---

1. Except where otherwise indicated, the court's reference to "defendants" throughout the body of the instant decision is to each of these eight defendants.

2. The following facts are culled from the second superseding indictment, Doc. 94.

prior to trial. *United States v. Biaggi*, 675 F.Supp. 790, 809 (S.D.N.Y.1987). Because redundant information is not necessary to prepare a defense, defendants are not entitled to discover through a bill of particulars information which is already available to them through other sources. *Feola*, 651 F.Supp. at 1132. In determining whether a bill of particulars is warranted, the court should consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise available to the defendants." *United States v. Diaz*, 675 F.Supp. 1382, 1390 (E.D.N.Y.1987) (quoting *United States v. Shoher*, 555 F.Supp. 346, 349 (S.D.N.Y.1983)).

■ Furthermore, demands for particulars regarding the formation of a conspiracy have almost universally been denied. Matters such as the exact time and place of the overt acts and names of the persons present are not properly the subject of a bill of particulars. *United States v. Wilson*, 565 F.Supp. 1416, 1438 (S.D.N.Y.1983) (quoting *United States v. Kahaner*, 203 F.Supp. 78, 84 (S.D.N.Y.1962)). The details regarding how and when a conspiracy was formed, or when each participant entered it, need not be revealed before trial. *Feola*, 651 F.Supp. at 1132. In fact, detailed evidence of a conspiracy is generally unavailable to defendants through a bill of particulars, and overt acts in furtherance of the conspiracy need not be disclosed. *United States v. DeFabritus*, 605 F.Supp. 1538, 1548 (S.D.N.Y.1985). Defendants are not entitled to the locations, other than those listed in the indictment, at which they are alleged to have violated the statute provided that this information is made available to defendants in a manner sufficient to enable them to properly prepare for trial. *Feola*, 651 F.Supp. at 1133 (citing *United States v. Massino*, 605 F.Supp. 1565, 1582 (S.D.N.Y.1985)). "Nor are defendants entitled to receive, by way of a bill of particulars, all documents which would in any way tend to verify the meetings or activities described in the overt acts; the exact time and place of each overt act in the indictment; the names and addresses of persons present during the meetings; nor all meetings at which the defendant was present." *Feola*, 651 F.Supp. at 1133 (citation omitted).

■ Items which have been held by other courts to be subject to disclosure through a bill of particulars include: "the names of all persons the Government will claim to have been co-conspirators, to the extent such persons are known to the Government; the locations of acts set forth in the counts, to the extent performed by principals; and the place where the principal offense charged allegedly occurred." *Feola*, 651 F.Supp. at 1133 (citations omitted). However, even these items may be exempt from disclosure if the information would reveal the government's theory underlying those counts. *Id.*

■ In the case at bar, the court reviewed each specific request by the defendants and finds, in view of the principles listed above, that the government has already provided each defendant with information specific enough to prepare a defense with reasonably diligent effort, avoid unfair surprise, and prepare a double jeopardy pleading, if applicable. The indictment is detailed, and significant discovery materials already have been provided to the parties. It is worth noting that the indictment contains an introductory section setting forth a somewhat detailed description of the structure of the alleged criminal organization and the roles each defendant held in that organization. Oct. 19, 1995 Second Superseding Indictment ("Indictment"), Doc. 94, at 1–8. The indictment also advises each defendant, with three exceptions discussed below, as to the time and place of alleged crimes and the names of codefendants. Each count in the indictment also contains the date, location and substance of the conduct that is alleged regarding the defendants named in those counts. It is especially noteworthy that the government has already provided defendants with extensive documents, and has provided them with the opportunity to inspect physical evidence, including photographs, audiotape recordings, laboratory reports, investigative reports and witness statements obtained from various law enforcement agencies.

Although the court finds that the government has disclosed substantial materials to defendants, certain additional information requested by three of the defendants must be

provided by the government. In particular, the court notes that defendants Howard, Belgrove and Felton are named only in count 2 of the indictment, charging them generally with conspiracy to possess and distribute certain narcotics. Count 2 is broadly drafted in that it alleges the defendants committed illegal acts at some point(s) during a four year period. The only other place at which defendants Howard, Belgrove and Felton are mentioned in the indictment is in the "introductory" section, which is incorporated by reference into Count 2. In the introductory section, defendant Howard is alleged to have been "a member of the conspiracy who stored drugs for Tommy Walker and others." Indictment, Doc. 94, at 7. Defendant Belgrove is alleged to have been "a member of the conspiracy and transported drugs from New York City to Central New York." *Id.* With regard to defendant Felton, the indictment alleges that he "was a member of the conspiracy and acted, at time, as a foremen [sic] and drug seller." *Id.* In contrast, the remainder of the indictment, Counts 3 through 27, names the other defendants with each count particularizing the nature of the conduct and the dates of offenses.

In order to allow defendants adequate information to prepare a defense, the government must provide a single bill of particulars setting forth information to the extent discussed below. First, with regard to defendant Howard, the government must specify to the extent presently known, what types of narcotics were allegedly stored for defendant Walker and the dates those narcotics were stored. Second, with regard to defendant Belgrove, the government must specify to the extent presently known, what types of narcotics were allegedly transported by the defendant, and the dates those narcotics were transported. Third, with regard to defendant Felton, the government must specify to the extent presently known, the dates that he allegedly acted as a narcotics foreman and seller, and the types of narcotics that were involved in those transactions.

Lastly, to the limited extent discussed below regarding defendant Miller's request to consolidate counts 16 and 18 as multiplicitous, the government must specify to the extent presently known information sufficient to enable those defendants to distinguish the offenses charged under those counts.

## II. Identity of Confidential Informants

 Defendants call upon the government to provide identity and background information of any informants that the government intends to call as a witness. To encourage knowledgeable persons to communicate information about wrongdoing to the government, the law recognizes a privilege to withhold the identities and background of informants who are promised confidentiality. *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). However, the privilege must give way if the disclosure of an informant's identity, or the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a case. In deciding a motion to reveal an informant's identity, the court must "balance the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. at 627–28.

Within the Second Circuit, a defendant is generally able to establish a right to disclosure "where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." *United States v. Saa,* 859 F.2d 1067, 1073–75 (2d Cir.1988), *cert. denied,* 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989). Nonetheless, even when the defendant can make such a showing, courts in this Circuit have held that the defendant is not entitled to pretrial identification of an informant where (1) the Government planned to have the informant testify at trial, thereby requiring the government to turn over *Jencks* material, and (2) defendant did not show a particularized need for pretrial disclosure. *United States v. Hana,* No. 94 CR. 116, 1994 WL 323642, at *4 (S.D.N.Y. July 5, 1994); *United States v. Gonzalez,* No. 93 CR. 960, 1994 WL 689065, at *3 (S.D.N.Y. Dec. 8, 1994). Lastly, a defendant may not be entitled to disclosure even though he had shown that the informant was a participant in and a witness to the crime charged. *Unit-

ed *States v. Jimenez,* 789 F.2d 167 (2d Cir. 1986).

■ In this case, the government has already identified three confidential informants, two of whom are incarcerated in federal prisons. With regard to those informants, the court notes that the government has been able to reveal their identity because of unusual circumstances that reasonably insure their safety until the time of trial. The government avers that the remaining informants are not so situated, and that they remain subject to the risk of threat and injury. Government's Response to Omnibus Motions ("Govt.'s Response"), Doc. 218, at 26. The court is unable to conclude after a careful review of each of the defendants' arguments, that the disclosure of the remaining confidential informants' identities is justified in this case. None of the defendants has identified a sufficiently particularized need that justifies access to the identity of the confidential informants prior to their testimony. Defendants' motions for disclosure of the identity of confidential informants that the government intends to call as witnesses at trial are therefore denied.

### III. Disclosure of Exculpatory Evidence

■ Defendants make a request to compel immediate disclosure of all exculpatory evidence and impeachment material. Disclosure of evidence tending to exonerate a defendant is, of course, mandated by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, it is well-settled in this circuit that *Brady* establishes no general right of pretrial discovery, nor does it give rise to any pretrial remedies. In short, *Brady* does not create a rule of discovery. *See United States v. Marquez,* No. 91 CR. 451, 1992 WL 88139 (S.D.N.Y.1992); 2 Charles A. Wright, Federal Practice and Procedure, § 254; *United States v. Higgs,* 713 F.2d 39, 42 (3d Cir.), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 725, 79 L.Ed.2d 185 (1983) ("The requirements of *Brady* are not based on any general constitutional right to discovery in criminal cases, but rather on a defendant's due process right to a fair trial."). With regard to the timing of disclosure, the Second Circuit has held that "nei-

ther *Brady* nor any other case requires that disclosures under *Brady* must be made *before* trial." *United States ex rel. Cornelius Lucas v. Regan,* 503 F.2d 1, 3, n. 1 (2d Cir.1974), *cert. denied* 420 U.S. 939, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975) (emphasis added to original); *see also Higgs,* 713 F.2d at 44 ("No denial of due process occurs if *Brady* material is disclosed to [defendants] in time for its effective use at trial."). Furthermore, it has been determined that due process requires only that the defendant receive such information before it is too late for him to make beneficial use of it at trial; i.e., prior to cross examination. *Regan,* 503 F.2d at 3.

■ Likewise, the disclosure of impeachment-type materials relating to the government's witnesses is mandated by *Giglia v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), and is properly disclosed when the witness is called to testify at trial. *United States v. Marquez,* No. 91 CR. 451, 1992 WL 88139, at *8 (S.D.N.Y.1992). Specifically, this rule encompasses the information that defendants seek regarding any consideration that the government may offer to a witness in exchange for his testimony or any matter which would cause the witness to color his testimony in favor of the government. *Id.*

The government indicates that it has provided and will continue to provide any exculpatory evidence as it becomes known, and that it will produce impeachment material at the time of trial. This anticipated schedule for production of discovery is appropriate. *James v. Kelly,* 648 F.Supp. 397, 403–04 (E.D.N.Y.1986); *Feola,* 651 F.Supp. at 1135. Accordingly, because the government is not required to do any more at this time, the court denies defendants' requests for disclosure of exculpatory evidence and impeachment material.

### IV. Discovery of Identification Evidence

■ Defendants Miller and Lindsey seek disclosure of identification procedures used against them to determine whether those procedures are subject to suppression under Rule 12(b) of the Federal Rule of Criminal Procedure. The government notes that copies of photographic lineups, which primarily

pertain to defendant Miller, are available for inspection by the defendants. The only other photographic lineups pertaining to the defendants in the instant case were those prepared by the Auburn and Utica Police Departments that included defendant Lindsey. Those lineups, according to the government, were used in an unrelated case. During oral argument, the government agreed to provide this evidence to defendant Lindsey.

The government also delivered to defense counsel government investigative reports setting forth all identification procedures used in this case. The court agrees with the government that the additional information sought by the defendants is not necessary to challenge the propriety of the lineup photographs. Because the government states that the defendants have access to all relevant photographic lineups and reports, and that the government will provide defendants with whatever other evidence in its possession with regard to the photo arrays, defendants' motions for additional identification evidence are denied without prejudice. Defendants may renew their motions if it appears that the government has not fully complied with its offer to disclose the material.

## V. Discovery of Co-conspirator Statements

■ Several defendants assert that they are entitled to disclosure of the statements of their alleged co-conspirators pursuant to Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure. Rule 16 explicitly provides that statements "by the defendant" are discoverable. The general rule in this Circuit is that statements made by co-conspirators are *not* discoverable under Rule 16(a). *United States v. Percevault*, 490 F.2d 126, 130–31 (2d Cir.1974). Rule 16 permits discovery only of a defendant's statements. However, this court previously held that on a broad reading of Rule 16, it is possible to regard the statements of co-conspirators made during the course of and in furtherance of a conspiracy as the statements of the defendant, and as such those statements are discoverable. *United States v. Konefal,* 566

F.Supp. 698, 706–07 (N.D.N.Y.1983) (Munson, C.J.).

This court acknowledged in *Konefal* however, that discovery of co-conspirator statements may be permitted on a Rule 16 motion only if the government does not intend to call the co-conspirators as witnesses at trial. If the government intends to call such co-conspirators as witnesses, the Jencks Act expressly makes statements of government witnesses, including co-conspirators, not discoverable until such time as the witness testifies.

In the case at bar, defendants request statements of their alleged co-conspirators, all of whom apparently are named as defendants in the indictments. The government has said that they intend to call some of these defendants as witnesses. Thus, as the situation presently stands, to the extent that the government will not be calling certain defendants as witnesses at trial, strict adherence to *Percevault* with regard to those defendants is not required. Following the rule established by this court in *Konefal,* the court finds that fairness and the interests of justice require disclosure of statements of co-conspirators who are named as defendants and who will not be called as witnesses by the government. This approach adequately addresses the government's concern for the safety of the co-defendants who will testify at trial.

In reaching this conclusion, the court declines the invitation to follow its previous decision in *United States v. Greater Syracuse Bd. of Realtors,* 438 F.Supp. 376 (N.D.N.Y. 1977). In *Konefal,* this court expressly declined to adhere to its prior decision in *Greater Syracuse* to the extent that decision is read as an absolute ban on pretrial disclosure of co-conspirator statements. *Konefal,* 566 F.Supp. at 706. In dicta, however, this court left open the possibility of following a course of non-disclosure if, in circumstances such as those presented in *Greater Syracuse,* there are numerous defendants and pretrial disclosure would unnecessarily reveal business secrets. *Konefal,* 566 F.Supp. at 706–07. Aside from the large number of defendants in the case at bar, the court is not presented with circumstances in which there

is a risk of harm to third parties from the disclosure of business secrets. Numerous courts have adopted the approach taken by this court in *Konefal*. *See Konefal*, 566 F.Supp. at 706, and cases cited therein; *United States v. Jackson*, 757 F.2d 1486 (4th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 407, 88 L.Ed.2d 358 (1985) ("defendant entitled to disclosure of statements of co-conspirators if the co-conspirator is not a prospective government witness and disclosure does not unnecessarily reveal sensitive information"); *United States v. Davidson*, No. 92–CR–35, 1992 WL 402959 *8, 1992 U.S.Dist. LEXIS 19434, at *29, and cases cited therein. The facts in the case at bar do not justify departure from the rule employed by this court in *Konefal* requiring the disclosure of co-conspirator statements. The court therefore declines to apply an absolute ban on disclosure of co-conspirator statements.

Defendants' motions for discovery of co-conspirators' statements are therefore granted, and the government must disclose to each defendant all the statements in its possession made during the course and in the furtherance of the conspiracy by those defendants the government does not intend to call as witnesses at trial.

### VI. Extra Peremptory Challenges

■ Defendants next seek additional peremptory challenges and the opportunity to exercise such challenges separately. For felonies such as those with which defendants are charged, Rule 24(b) provides for 6 peremptory challenges for the government and 10 for the defendants jointly. Of course, the court has broad discretion to change this allotment and provide additional peremptory challenges. Likewise, the court may determine whether peremptory challenges should be exercised jointly or separately. *United States v. Aloi*, 511 F.2d 585, 598 (2d Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975). Moreover, the award of additional peremptory challenges may be conditioned on the defendants' stipulation that the government also receive additional challenges.

The court is inclined to increase the number of peremptory challenges for the defen-

dants upon their stipulation that the government receive a proportional increase. Final decision on this issue is reserved, however, as well as the issue of whether the defendants should be allowed to exercise these challenges separately, until such time as the parties file their final pretrial submissions. At that time, defendants should notify the court whether they would prefer to exercise these challenges individually.

### VII. Early Disclosure of Jencks Act Material

■ Defendants request an order directing the government to produce witness statements and reports in a timely fashion pursuant to the Jencks Act, 18 U.S.C. § 3500. However, the Jencks Act provides that no statements by a government witness shall be the subject of discovery or inspection until such witness has testified on direct examination in the trial. This court cannot order production of witness statements before they have testified. *United States v. Percevault*, 490 F.2d 126, 129 (2d Cir.1974).

■ However, the government agrees to provide Jencks material to the defendants one week prior to the trial. Because the government has already agreed to provide the information sought by the defendants, their motions are denied.

### VIII. Production of Witness List

■ Defendants request disclosure of a witness list in advance of trial. While the general discretion of district courts to compel the government to identify its witnesses is widely acknowledged, in this Circuit the government may be required to produce a witness list only if defendant makes a "particularized showing of need." *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir.1990). As justification for production of a witness list, defendants merely cite the number of defendants, the length of the conspiracy, and the need to prepare an adequate defense as justifications for their requests. None of the defendants makes a particularized showing sufficient to require the production of a witness list prior to trial. Therefore, the defen-

dants' requests for production of a witness list in advance of trial are hereby denied.

## IX. Preservation of Government Agents' Notes

Defendants next request the court to direct the preservation of all notes of law enforcement officials relating to this case. Some of the defendants ask this court to "place the government on notice" to retain any existing rough notes.

■ The government must permit a defendant to inspect and copy the substance of any oral statement that the government intends to offer in evidence at the trial made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a government agent. Fed.R.Cr.Proc. 16(a)(1)(A). In order to fully comply with Rule 16, the government only needs to provide the defendant with the typewritten memoranda of interviews prepared from the agent's handwritten notes. *United States v. Konefal*, 566 F.Supp. 698, 708 (N.D.N.Y. 1983).

There are, however, certain circumstances under which a defendant is entitled to receive copies of a government agent's rough notes. The Jencks Act provides that a defendant in a federal criminal trial, after a government witness has testified on direct examination, is entitled to receive for purposes of cross-examination *any* written statement of the witness in the government's possession, including handwritten notes, which relates to the subject matter as to which the witness testified. 18 U.S.C. § 3500(b); *United States v. Koskerides*, 877 F.2d 1129, 1133 (2d Cir.1989). Therefore, defendants are entitled to examine any notes by a government witness after that witness has testified at trial.

The government cites the *Koskerides* decision for the proposition that "rough notes, even if retained, are not discoverable, even under the Jencks Act." Govt.'s Response, Doc. 218, at 21. That is a misstatement of the holding in *Koskerides*. In that case, the defense was provided with typewritten memoranda of interviews prepared from hand-written notes. The handwritten notes were preserved by the agent and submitted to the district court for *in camera* inspection. The court compared the notes with the memoranda of interview and denied disclosure of the notes, finding that everything in the notes was contained in the memoranda given to the defendant. The trial court also found that the notes did not pertain to anything discussed by the agent in his testimony on direct examination. Based on those circumstances, the Second Circuit held that the district court's refusal to order disclosure of the handwritten notes did not violate the Jencks Act. *Koskerides*, 877 F.2d at 1133. The Court's holding in *Koskerides* does not support the proposition advanced by the government in the case at bar, that a government agent's notes are not discoverable under the Jencks Act, even if retained.

Lastly, the court notes that the Second Circuit has held that the Jencks Act imposes no duty on the part of government agents to *retain* rough notes when their contents are incorporated into official records, provided however that the notes *had been destroyed in good faith*. *United States v. Anzalone* 555 F.2d 317, 321 (2d Cir.1977); *United States v. Sanchez*, 635 F.2d 47, 66 n. 20 (2d Cir.1980). In the case at bar, the government is under an obligation to advise the appropriate law enforcement agents that any rough notes pertaining to the instant case must be retained for possible disclosure at trial pursuant to the government's obligation under the Jencks Act.

In summary, defendants' motions are a reasonable request for the preservation of material potentially discoverable under the Jencks Act, and therefore their motions are granted. The government must advise the appropriate law enforcement agents to retain rough notes, consistent with the court's discussion above.

## X. Severance

■ Defendants move for severance from their codefendants pursuant to Rule 14 of the Federal Rules of Criminal Procedure. After a careful examination of the arguments advanced by each of the defendants, the court does not find any of them persuasive. De-

fendants were joined in the same indictment pursuant to Federal Rule of Criminal Procedure 8(b), which provides for joinder of multiple defendants when they have participated in the same act or transaction or in a series of related acts or transactions which are part of a common scheme or plan. Where the defendants' activities are part of a series of acts or transactions which make up the underlying offenses, it is not necessary that each defendant be charged in each count, nor is the government required to prove that each defendant participated in every act or transaction in the series of events comprising the scheme. *See United States v. Cardascia,* 951 F.2d 474, 482 (2d Cir.1991).

Courts in this Circuit have repeatedly stressed that defendants who are indicted together will normally be tried together, particularly when the charges against the defendants involve a common plan or scheme as they do in this case. *See United States v. Matos–Peralta,* 691 F.Supp. 780, 789 (S.D.N.Y.1988), *aff'd sub nom. United States v. Benitez,* 920 F.2d 1080 (2d Cir.1990), and cases cited therein. Thus, each defendant bears a heavy burden in moving for severance pursuant to Rule 14. *Id.* To meet that burden each movant must show that "he will be so severely prejudiced by a joint trial that he will in effect be denied a fair trial" if forced to be tried in the same proceeding as his codefendants. *United States v. Minicone,* 960 F.2d 1099, 1110 (2d Cir.1992). The defendants fail to meet this substantial burden.

Furthermore, it is established law that a separate trial is not required simply because one defendant's role in a conspiracy is smaller or less central than that of other co-conspirators. *United States v. Torres,* 901 F.2d 205, 230 (2d Cir.1990). Different levels of culpability and proof are inevitable in multi-defendant trials. The mere circumstance that some evidence is admissible against one defendant but not others in a joint trial does not constitute prejudice warranting severance. *United States v. Losada,* 674 F.2d 167, 171 (2d Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). In any event, where evidence is relevant to the guilt only of a single codefendant, a limiting instruction is sufficient. *United States v. Alvarado,* 882 F.2d 645, 655–56 (2d Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990).

Because none of the defendants has shown any prejudice resulting from a joint trial, the interests of judicial economy outweigh the requests for severance. With respect to those defendants who seek severance from defendant Walker because he is without counsel, the court concludes that the recent assignment of counsel for Mr. Walker moots that argument. Therefore, defendants' motions for severance are denied.

## XI. Discovery of Electronic Monitoring Evidence

Defendants next bring motions for the disclosure of electronic monitoring evidence. The government avers that it employed two electronic intercepts on pagers and that it has taken steps to make available to each defendant the applications, orders and related papers for these intercepts. The court is satisfied that the government will provide the defendants with all relevant electronic monitoring evidence. Defendants' motions to compel disclosure of electronic surveillance evidence are denied without prejudice, to allow any defendant to renew the motion if it appears that the government has not disclosed all of the relevant evidence.

## XII. Dismiss Indictment/Disclose Grand Jury Transcripts

Turning to defendant Miller's motion for dismissal of the indictment, in which defendants Cobb, Howard, and Belgrove join, it is a well-established rule that an indictment which is valid on its face cannot be challenged on the ground that it was based on inadequate or incomplete evidence. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). An indictment is sufficient when it contains the elements of an offense, notice to the defendant of the charges he must be prepared to meet, and information sufficient to protect the defendant from the risk of double jeopardy. *United States v. Bailey,* 444 U.S. 394,

414, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980). "An indictment need only track the language of the statute and, *if necessary* to apprise the defendant of the nature of the accusation against him, state time and place in approximate terms." *United States v. Covino,* 837 F.2d 65, 69 (2d Cir.1988). Here, the defendants argue that the evidence was insufficient to warrant the indictment. Such an argument clearly is inadequate to justify dismissal of the indictment, and the motions to dismiss therefore are denied.

▮ As for the motions for disclosure of grand jury transcripts, in order to prevail on such a motion a defendant must demonstrate a "particularized need." *Dennis v. United States,* 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966). Defendant Miller's bald assertion that the transcripts will reveal the insufficiency of evidence to warrant the indictment is insufficient to meet this threshold. The motions for disclosure of grand jury transcripts therefore are denied.

### XIII. Admissibility of Co-conspirator Statements

▮ The court now turns to defendants' motions requesting the court to order the government to prove in a pretrial hearing the existence of the conspiracy before it is permitted to introduce co-conspirator statements at trial. The defendants essentially seek a form of pretrial hearing that was approved by the Fifth Circuit in *United States v. James,* 590 F.2d 575, 581 (5th Cir.), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

The Second Circuit has outright rejected the use of pretrial proceedings to determine the existence of a conspiracy. Rather, courts in this circuit are instructed to admit co-conspirator statements subject to the government's ability to "connect up" the statement with the conspiracy. At the close of the government's case-in-chief, the court will determine whether the government has proven the existence of a conspiracy by a preponderance of the evidence. If the government has carried its burden, then any co-conspirators statements will remain in the record; if the government has not carried its burden, then

the court will order that the remarks be stricken from the record. The Second Circuit adopted this framework in *United States v. Geaney,* 417 F.2d 1116, 1120 (2d Cir.1969), *cert. denied* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970).

. Courts within this Circuit have consistently used *Geaney* to reject the pretrial hearing approach advocated by the defendants. In fact, the Southern District of New York rejected defendants' proposed approach in unequivocal terms when it wrote that: "At this late date, a motion for a *James* hearing in this Circuit must be regarded as frivolous. Defendants who want *James* hearings should so conduct their business as to be tried in the Fifth or Eleventh Circuits." *United States v. Feola,* 651 F.Supp. 1068, 1130 (S.D.N.Y. 1987), *aff'd,* 875 F.2d 857 (2d Cir.), *cert. denied,* 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). Since the Second Circuit has unambiguously rejected the pretrial hearing requested by the defendants, their motions in this regard are denied.

### XIV. Discovery Under Rule 16

Defendants Lindsey, Chaney, Belgrove, Felton, and Watson seek an order requiring the government to give notice and access to evidence discoverable under Rule 16 of the Federal Rules of Criminal Procedure. Such an order is expressly authorized under Rule 12(d)(2). In this case, the government has assured the court that it has disclosed to all defendants the evidence that it intends to utilize in its case-in-chief and which is also discoverable under Rule 16, including statements by the defendants. The government also provides assurances that further materials will be provided if they become available. Based upon this assurance, defendants' motions are denied without prejudice and with leave to renew if at the time of trial it appears that the government has not satisfied these obligations.

▮ As to the request by some of the defendants for a written summary of the testimony of expert witnesses the government intends to use, the government also has assured the court that it either already has, or intends to shortly disclose a written sum-

mary of their testimony and credentials to the defendants. If additional experts are used during the trial, the government agrees to provide this material to the defendants as soon as it is available. Thus, the court is satisfied that the government has complied with its obligations under Rule 16, and the defendants' motions are denied.

### XV. Character Evidence

■ Defendants also seek disclosure of any character evidence admissible under Federal Rule of Evidence 404(b) which the United States intends to use at trial. As specifically requested by each defendant, the government agrees to disclose the general nature of such evidence. The government has said that it intends to question the defendants with regard to evidence of other crimes, wrongs or acts as reflected on their New York State criminal history "rap sheets", including the facts underlying those charges. The court has carefully reviewed the summary of the character evidence the government intends to introduce at trial, as outlined in its response papers, and is satisfied that the government has complied with its obligations under Rule 404(b).

In addition, the government agrees to disclose newly discovered evidence as it becomes known and whether the United States intends to use the evidence at trial. Because the court is satisfied by the government's assurance that it will fully comply with its obligations, defendants' motions are denied.

### XVI. Criminal Records—Disclosure/Admissibility

Defendants move for an order pursuant to Federal Rule of Evidence 609 for the disclosure, not later than 7 days before trial, of any bad acts or prior convictions that may be used against them during cross-examination should a defendant elect to take the stand. The defendants also request a hearing to determine the admissibility of such evidence. In response, the government has agreed to provide any defendant, upon request, a copy of their criminal history, if one exists. Because the government agrees to supply this information, defendants' motions are denied without prejudice, subject to renewal if the

government does not come forward with the agreed upon productions at least 7 days before trial. The court next addresses defendants' request for an admissibility hearing.

■ In making a determination of admissibility under Rule 609, the central factor for the court to consider is whether the crime, by its nature, is probative of defendant's lack of veracity. *Feola,* 651 F.Supp. at 1127. In order to make such a determination, the court must be informed of defendant's testimony with a degree of precision that cannot be obtained absent defendant's actual testimony. *See Luce v. United States,* 469 U.S. 38, 41, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984). "Without adequate notification of what defendant's testimony will reveal, the trial judge cannot compare the relevance of the prior conviction to credibility with the importance to [defendant's] defense of having him testify free from the prejudice which might be created by reference to it." *Feola,* 651 F.Supp. at 1127.

Furthermore, the Supreme Court noted in *Luce* that requiring a defendant to make a pretrial proffer of testimony is no substitute for actual testimony. *Luce,* 469 U.S. at 41 n. 5, 105 S.Ct. at 463 n 5. Thus, in order to perform the necessary balancing the court should defer the determination of this issue until trial, when the record will be sufficiently developed and it becomes apparent whether defendants actually intend to testify on their own behalf.

Because the factors to be weighed in determining the admissibility of prior bad acts are best evaluated at trial, defendants' motions for a pretrial admissibility hearing pursuant to Federal Rule of Evidence 403 are denied without prejudice. Defendants are free to renew this motion at the close of the government's case-in-chief.

### XVII. Suppression of Physical Evidence and Statements

#### A. Defendant Belgrove

Defendant Belgrove moves for suppression of drug evidence seized by state police from his car during a traffic stop in January 1995. Def. Belgrove's Notice of Motion, Doc. 194,

at 5–6. New York State Troopers stopped Belgrove for speeding, and asked to search his car after smelling a strong odor of alcohol coming from the vehicle. The officers found 12 ounces of cocaine base. Belgrove was arrested and charged with criminal possession of a controlled substance, a violation of the New York Penal Law. Belgrove pursued suppression of the evidence. Def. Belgrove's Notice of Motion, Doc. 194, at 5–6; Govt.'s Response, Doc. 218, at 36–38. After the government consented during oral argument to hold a hearing, the court granted defendant Belgrove's motion in a decision from the bench. After the suppression hearing was held on March 27, 1996, the court reserved decision and will issue a Memorandum–Decision and Order in the near future.

### B. Defendant Watson.

Defendant Watson moves for the suppression of evidence seized pursuant to three search warrants that were issued on consecutive days in February 1995. Def. Watson's Notice of Motion, Doc. 200, at 26–28; Def. Watson's Mem. of Law, Doc. 201, at 1–17. The first search warrant at issue was for the person of Prentis Lindsey, a defendant in the instant case, and was issued by an Auburn City Court Judge on February 23, 1995 based on an application by Officer Thomas Murphy. Exh. 3, attached to Govt.'s Response, Doc. 218, and at 39–42; Def. Walker's Notice of Motion, Doc. 200, at 26–28. Officer Murphy averred in the warrant application that defendant Lindsey, a suspect in a shooting, was reported to be in Auburn, New York. Officer Murphy also included a substantial amount of information about Lindsey provided by Leon Whitehurst, an informant. Specifically, the informant claimed that he knew Lindsey and recently loaned an automobile to him. The vehicle was parked in the rear driveway of 3 Perrine Street, Auburn, New York. Furthermore, the informant said that he recently spoke with defendant Lindsey in the area of Perrine Street. The informant placed a phone call to an apartment at 3 Perrine Street and "confirmed that Prentis Lindsey was present" at that address. *Id.* An Auburn City Police Officer also placed a call to a telephone pager number registered under Lindsey's name.

Officer Murphy averred in the warrant application that "a black male called the number back which was placed in the pager from a phone listed to [an individual residing at] 3 Perrine Street Apt 1 [sic]" *Id.*

Armed with a warrant to search the premises of apartment number one at 3 Perrine Street for the person of defendant Lindsey, Exh. 3, attached to Govt.'s Response, Doc. 218, Auburn police officers set up a surveillance of the residence during the late evening on February 23, 1995. During that surveillance and immediately prior to the search, Auburn Police Sergeant David J. Delfavero observed from an adjacent parking lot a black male leaning inside the driver's side door of a vehicle parked behind the apartment building. Sgt. Delfavero's Affid., attached to Exh. 5, Govt.'s Response, Doc. 218. After several minutes, the man closed the car door and entered the back door of apartment number one. No one else was seen entering or leaving the apartment. A short time thereafter, a team of police officers, including Sgt. Delfavero, entered that apartment. *Id.* Defendant Watson, who identified himself as "Archie Hooks", was the only person present. Sgt. Delfavero identified him as the individual he saw looking inside the vehicle shortly before the search. The vehicle, it was subsequently learned, was owned by defendant Whitehurst. *Id.*

During the execution of the warrant, Officer Murphy was assigned to cover the parking area located at the rear of apartment building in order to secure the rear entrance to the apartment. Officer Murphy's Affid., attached to Exh. 5, Govt.'s Response, Doc. 218. Just prior to the execution of the search warrant, Sgt. Delfavero told Officer Murphy that a black male had exited the car located in the rear parking area and entered apartment number one. After the search warrant was executed, Officer Murphy learned that defendant Watson was the only person found inside the apartment. Officer Murphy then walked over to the vehicle and looked inside to see if defendant Lindsey was in the vehicle, "to be sure the wanted suspect had not remained in the vehicle in hiding." *Id.* He observed "in plain view a clear plastic bag, half out and half under the drivers

seat which contained a white chunkey material which appeared to be crack cocaine. [sic]" *Id.*

A second warrant was obtained during the early morning hours on February 24, 1995, to search the apartment and the vehicle for drug-related contraband. The search warrant application was accompanied by affidavits from Officer Murphy and Sgt. Delfavero, which contained their observations made during the execution of the first search warrant. Exh. 5, attached to Govt.'s Response, Doc. 218. Upon execution of the second warrant, additional contraband was found at the residence and in the passenger compartment of the vehicle.

One day later, a third warrant was obtained after an informant told law enforcement agents that the trunk of the vehicle contained drugs. Search Warrant Application, Exh. 4, attached to Govt.'s Response, Doc. 218. Attached to the warrant application were the affidavits submitted by Officer Murphy in support of the first and second warrants, and an affidavit from Auburn Police Officer Douglas Parker. Exh. 4, attached to Govt.'s Response, Doc. 218. Officer Parker averred that he received a tip from a police officer who was present during the arrest of defendant Lindsey the night before in Syracuse, New York. That officer learned from a confidential informant who had assisted the police in locating Lindsey that the trunk of the vehicle contained about "$40,000 worth of dope." *Id.* A search of the trunk yielded additional cocaine. Def. Walker's Notice of Motion, Doc. 200, at 26–28; Govt.'s Response, Doc. 218, at 39–42.

Defendant Watson contends that any evidence seized as a result of the execution of the first warrant must be suppressed because any contraband found at the apartment was the result of an illegal search. First, defendant Watson objects that police officer's failed to verify the telephone number dialed by defendant Whitehurst or that he actually spoke to defendant Lindsey at the Perrine Street apartment. He also objects that the informant was not reliable. Def. Watson's Mem. of Law, Doc. 218, at 4. Therefore, the warrant lacked sufficient indicia to support a finding of probable cause. Def. Watson's Notice of Motion, Doc. 200, at 26–28.

The search of the automobile was unconstitutional, according to defendant Watson, because the warrant application was based on observations made by an officer while he was unlawfully in the "rear driveway" of the residence. Defendant asserts that the driveway is afforded Fourth Amendment protection because it falls within the curtilage of the apartment. Def. Watson's Mem. of Law, Doc. 201, at 12–13. The observations made by the officers of evidence contained in the vehicle and the apartment exceeded the scope of the search warrant, which only authorized a search of the apartment for the person of defendant Lindsey. The plain view exception to a warrantless search does not apply, defendant further argues, because the officers did not have a lawful right to be in the driveway once the search of the apartment should have ended.

Lastly, with regard to the warrant to search the automobile's trunk, defendant Watson argues that there was no probable cause to issue the warrant because the application contained the same unreliable information used to obtain the first two warrants, and also was based on evidence illegally seized during the execution of the first two warrants. *Id.* at 15.

The government does not consent to a suppression hearing and contends that the search warrants were validly obtained and executed. The government avers that the information used to obtain each of the warrants was sufficient to establish probable cause. The law enforcement officials who obtained the warrants should not be penalized, the government argues, for erring on the side of caution by obtaining a search warrant for each step of their search of the residence and automobile. Govt.'s Response, Doc. 218, at 39–42.

Before discussing the merits of the instant motion to suppress, the court must address several preliminary matters. First, the court draws the parties' attention an apparent confusion regarding the sequence in which the search warrants were issued. The government at times refers to exhibits four and five attached to its response papers as copies of

the warrants issued on February 24 and 25 respectively. Govt.'s Response, Doc. 218, at 40–41. However, a careful examination of those exhibits appears to show that exhibit 5 is a copy of the warrant issued on February 24, 1995 authorizing a search of the apartment and the automobile. Exhibit 4 appears to be a copy of the warrant issued on February 25, 1995 authorizing a search of the automobile only. Defendant Watson makes the same error in his discussion of the warrants. *See* Def. Watson's Notice of Motion, Doc. 200, at 27 ("The third search warrant authorized law enforcement officials to search 3 Perrine Street and the 1984 Buick."); Def. Watson's Mem. of Law, Doc. 201, at 13. The instant decision is based on the court's assumption that exhibit 5 is the warrant issued February 24, 1995 to search the apartment and automobile, and that exhibit 4 is the warrant issued on February 25, 1995 to again search the vehicle. Furthermore, the court notes that the government attached to its response unexecuted copies of the three search warrants at issue in the instant motion. The government stated during oral argument and in its response that copies of the executed search warrants, as well as the accompanying affidavits and returns will be provided to defendants in the near future. Govt.'s Response, Doc. 218, at 40 n. 1.

■ Defendant Watson also argues that state law, not federal, should govern the court's determination whether the search of defendant Watson's residence was unconstitutional. Def. Watson's Mem. of Law, Doc. 201, at 7–8. In particular, defendant argues that state law should govern because there was no involvement of federal officers in obtaining or executing the warrants. *Id.* at 8–9.[3] It is a well-established rule in this Circuit that federal rather than state law determines the admissibility of evidence in federal criminal proceedings. *United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir. 1987); *see also United States v. Eyerman*, 660 F.Supp. 775, 779 (S.D.N.Y.1987). In *Pforzheimer*, the Second Circuit expressly

held that federal rather than state law determines the admissibility of evidence obtained in a search conducted by state officials as part of a state investigation, even though the search was arguably improper under the state constitution. *Pforzheimer*, 826 F.2d at 204. The Second Circuit reaffirmed the rule that federal search and seizure law governs a federal prosecution, even in the face of more expansive state protections. *United States v. Scopo*, 19 F.3d 777, 785 (2d Cir.1994). Because defendant's arguments have been squarely rejected by the Second Circuit, the court will apply federal law to determine whether the searches at issue violated defendant's constitutional rights.

■ The burden of proof in a motion to suppress physical evidence is on the defendant who seeks the suppression. *United States v. Levasseur*, 618 F.Supp. 1390, 1392 (E.D.N.Y.1985) (citing *United States v. Feldman*, 606 F.2d 673 (6th Cir.1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1648, 64 L.Ed.2d 236 (1980)). Thus, as a starting point, the court presumes that the affidavit supporting the search warrant is valid. *Franks v. Delaware*, 438 U.S. 154, 155–56, 171–72, 98 S.Ct. 2674, 2676, 2684, 57 L.Ed.2d 667 (1978). The burden of proof shifts, however, once the defendant establishes some basis for the motion. The standard of proof on the party who carries the burden is a preponderance of evidence. *Levasseur*, 618 F.Supp. at 1392 (citing *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The court lastly notes that an evidentiary hearing is not required if the defendant's moving papers do not state sufficient facts which, if proven, would have necessitated suppression of the evidence. *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir.1969), *cert. denied*, 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510 (1970); *United States v. Purin*, 486 F.2d 1363, 1367 (2d Cir.1973) ("no facts in the record before us or urged on appeal which would justify an evidentiary hearing") (citing *Purin*, 486 F.2d at 1365). *See also* 3 Charles A. Wright, Federal Practice and Procedure, § 675, at 781–82

---

**3.** Oddly enough, after arguing for the application of state law, defendant relies almost exclusively upon federal law in arguing that the searches at issue violated his constitutional rights. Def. Watson's Mem. of Law, Doc. 201, at 9–17.

("Factual allegations that are general and conclusory or based upon suspicion and conjecture will not suffice."), and cases cited therein.

Defendant Watson's objections to the search of the apartment and automobile are, in essence, challenges to the probable cause supporting the warrants and to the proper scope of searches. First, defendant challenges certain statements made in each of the applications for the three search warrants at issue, and claims that the issuance of the warrants lacked probable cause. Defendant also objects that the execution of the warrants exceeded their scope. With the above principles in mind, the court turns to a discussion of these challenges.

### 1. *Probable Cause to Issue Search Warrants*

■ The Fourth Amendment to the United States Constitution provides in relevant part: "[N]o warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Amendment IV. With regard to whether the search warrants in the instant case were supported by probable cause, "the duty of a court reviewing the validity of a search warrant is simply to ensure that the magistrate had a substantial basis for conclud[ing] that probable cause existed." *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir.1993) (citing *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–39, 76 L.Ed.2d 527 (1983)). Furthermore, a "search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant." *Rosa*, 11 F.3d at 326 (internal quotation marks omitted) (quoting *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir.1983)).

In evaluating whether an affidavit was sufficiently reliable to support a determination of probable cause, a "totality of the circumstances" approach is taken. *Gates*, 462 U.S. at 234, 103 S.Ct. at 2330. Under this approach, "a balanced assessment of the relative weights of all the various indicia of reliability" including the affiant's veracity and the basis of his knowledge as set forth in the warrant application must be considered. *Id.*

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238, 103 S.Ct. at 2332.

A probable cause determination is a "practical, non-technical" endeavor, in which the court questions whether "there [is] a fair probability that the premises will yield the objects specified in the search warrant." *Travisano*, 724 F.2d at 346.

In arguing that there was insufficient evidence to support a finding of probable cause for the issuance of all three search warrants, defendant Watson argues that the police officers failed to verify whether the telephone call placed by the informant, defendant Whitehurst, was actually to the apartment located at 3 Perrine Street, or that he actually spoke to defendant Lindsey. In addition, defendant Watson alleges that the informant's statements were inherently untrustworthy in that they were provided to police officers at a time when the informant was under arrest for possession of narcotics. Defendant Watson alleges that the informant cooperated in "an obvious attempt to help his dire situation." Def. Watson's Mem. of Law, Doc. 201, at 15.

■ With regard to defendant Watson's contention that the officers allegedly failed to verify the phone number called by the informant, the court observes that the affidavit does not describe the circumstances under which the phone call was placed. The affidavit only states that "[o]n February 23, 1995, Leon Whitehurst placed a phone call to 3 Perrine Street Apt 1, 252–5321 at 10:00 p.m. and confirmed that Prentis Lindsey was present at 3 Perrine Street Apt 1 [sic]" Affid. attached to Exh. 3, Govt.'s Response, Doc. 218. In addition, the affidavit does not state that the informant, who provides virtually all of the information used in the affidavit, had

recently been charged by the Auburn Police Department with possession of narcotics. Viewed as a whole, however, the affidavit was sufficiently reliable to support a determination of probable cause.

In addition to the information regarding the telephone call placed by the informant, the affidavit contains several observations by the affiant sufficient to support probable cause. First, Officer Murphy averred that members of the Auburn Police Department were advised on February 22, 1995 that Lindsey "was in Auburn, New York." Officer Murphy's Feb. 23, 1995 Affid., attached to Govt.'s Response, Doc. 218. He also averred that an officer placed a call to defendant Lindsey's pager and that there was a reply to the call that originated from the Perrine Street apartment. In addition, the affidavit contains the informant's statements that he saw Lindsey near the apartment, that the informant loaned his car to Lindsey, and that the car was parked in the driveway of the apartment at 3 Perrine Street.

Under the totality of the circumstances test set forth in *Gates,* which requires the magistrate to make a "common sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place," *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, the court concludes that, even excluding consideration of the informant's call to the apartment, the statements viewed as a whole support a finding that there was probable cause to believe that the person listed in the warrant would be found at the Perrine Street apartment.

By providing the information that he had spoken with Lindsey in the area of the apartment and that he loaned his automobile to Lindsey, the informant established an adequate basis for his knowledge. *See Gates,* 462 U.S. at 230, 103 S.Ct. at 2328 ("basis of knowledge" is "highly relevant in determining the value of [the informant's] report"). As to the informant's alleged self interest in cooperating with law enforcement officials, the court also finds that the range of details regarding the whereabouts of defendant Lindsey, including the informant's admission that he knew Lindsey well enough to loan the automobile to him, is itself strong indicia of reliability. Furthermore, unlike many informant cases, the informant in the case at bar was not anonymous. While there is no indication in the record that Whitehurst testified under oath as to the facts contained in the affidavit, his identity was revealed to the judge who reviewed the application, who may have been able to make an independent corroboration of the informant's reliability. *See United States v. Elliott,* 893 F.2d 220, 223 (9th Cir.1990), and cases cited therein.

Furthermore, with regard to the allegation that Whitehurst may have been less than truthful in providing information to Officer Murphy or other officers, an attack upon the statements of the informant himself are permitted only for the purpose of demonstrating the misstatements of *governmental* actors. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the [police] affiant, not of any nongovernmental informant."). Defendant Watson may claim as a defense at trial that Whitehurst fabricated evidence, but that claim is not appropriate to attack the search warrant. Under *Franks,* defendant Watson must show also that the police knew that Whitehurst's statements were false, or that the officers exhibited reckless disregard as to their truthfulness. *See United States v. Wapnick,* 60 F.3d 948, 955 (2d Cir.1995) (setting forth the two-part test for granting a *Franks* hearing) (quoting *United States v. Ferguson,* 758 F.2d 843, 848 (2d Cir.), *cert. denied,* 474 U.S. 841, 841, 106 S.Ct. 124, 125, 88 L.Ed.2d 102 (1985)). Because defendant Watson does not directly challenge the law enforcement officers' veracity, there is no need for the court to consider whether a *Franks* hearing is required in the case at bar.

Accordingly, the court holds that the issuance of the search warrant for Prentis Lindsey was proper. Therefore, the court denies defendant Watson's motion for a suppression hearing, to the extent that the motion is based on a challenge to the lack of probable cause to issue the first search warrant.

### 2. Scope of Searches

Defendant Watson next argues that various law enforcement officials exceeded the legal scope of their searches of the apartment at 3 Perrine Street and the automobile. The court discusses defendant's challenge to each search seriatim.

### (a) Search of Apartment

Defendant Watson complains that the search of the apartment should have ended once the officers executing the warrant realized that the person they were searching for was not present. According to defendant Watson, "any items seized during the execution of the search warrant at 3 Perrine Street must be suppressed because such seizure exceeded the scope of the warrant." Def. Watson's Mem. of Law, Doc. 201, at 9.

The burden of proof in a motion to suppress physical evidence is on the defendant who seeks the suppression. *Levasseur*, 618 F.Supp. at 1392. An evidentiary hearing is not required if the defendant's moving papers do not state sufficient facts which, if proven, would have necessitated suppression of the evidence. *Culotta*, 413 F.2d at 1345. Defendant Watson's apparent conjecture that the officers exceeded the scope of the first search warrant is belied by the facts presently in the record. The Auburn police officers apparently searched defendant Watson's apartment for contraband after obtaining a second warrant authorizing the search. Exh. 5, attached to Govt.'s Response, Doc. 218. In the words of Justice Blackmun, "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. Whether evidence was lawfully seized from the apartment actually depends upon the validity of the second warrant, which authorized a search of the apartment and automobile for cocaine and other contraband. Therefore, in the absence of more specific allegations as to what actions the officers took between the time they effectuated the search warrant for the person of defendant Lindsey and when they obtained the second warrant, the court denies defendant Watson's motion to suppress evidence.

### (b) Search of Automobile

Defendant Watson next objects to the search of the automobile that was parked in the rear area of the driveway appurtenant to the apartment building in which he resided. The initial "search", if it can be called such, occurred at about the time of the execution of the first warrant, when Officer Murphy looked into the passenger compartment of the vehicle and saw what appeared to be evidence of crack cocaine. This is the so-called "plain view" search.

As a general rule, a law enforcement official must obtain a search warrant to seize an individual's property. *United States v. Jenkins*, 876 F.2d 1085, 1088 (2d Cir.1989) (per curiam) (citation omitted). The requirement that an officer obtain a warrant prior to a search "creates a presumption that any warrantless search or seizure is unconstitutional, and requires that evidence obtained in such illegal searches be excluded from trial." *Jenkins*, 876 F.2d at 1088 (citation omitted). In his affidavit in support of the warrant application, Officer Murphy averred that he observed "in plain view a clear plastic bag, half out and half under the drivers seat which contained a white chunkey material which appeared to be crack cocain. [sic]" Affid. attached to Exh. 3, Govt.'s Response, Doc. 218.

### (1) Whether Scope of Search Warrant Extended to Automobile

The court first discusses whether the initial look into the vehicle by Officer Murphy fell within the scope of the first warrant. If so, the need to justify the search under the "plain view" exception is obviated because the officer's act of looking into the vehicle fell within the ambit of the search warrant.

In *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987), the Supreme Court noted that the Fourth Amendment requires that warrants particularize the places searched and things seized. The purpose of this requirement, according

to the Court, "was to prevent general searches." *Id.* The court further noted that "the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* Thus, as the Second Circuit has stated, "[t]he scope of a search pursuant to a valid warrant is defined by the warrant's description of the premises and the objects of the search, and by the places in which the officers have probable cause to believe those objects may be found." *United States v. Kyles,* 40 F.3d 519, 523 (2d Cir.1994) (citing *Garrison,* 480 U.S. at 84, 107 S.Ct. at 1016). In *United States v. Ross,* 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982), the Supreme Court held, regarding the lawful scope of a search, that a "lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."

Whether the legitimate scope of a warrant authorizing the search of a house also allows a search of an automobile located on the premises has been addressed by several circuits. In *United States v. Singer,* 970 F.2d 1414, 1417–18 (5th Cir.1992), the Circuit Court affirmed a trial court's decision refusing to suppress evidence obtained from a search of two automobiles located on the property of a residence for which a search warrant was issued. In affirming the lower court, the Circuit Court explained that "[t]his court has consistently held that a warrant authorizing a search of 'the premises' includes vehicles parked on the premises." *Singer,* 970 F.2d at 1418 (citing *United States v. Cole,* 628 F.2d 897, 899 (5th Cir. 1980) (additional citations omitted), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981)). In *United States v. Napoli,* 530 F.2d 1198, 1200 (5th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976), the Circuit Court held that "the reference to 'on the premises known as 3027 Napoleon Avenue' was sufficient to embrace the vehicle parked in the driveway on those premises." The search warrant also contained the following language qualifying the above description with: "being a large, multiple-story, wooden frame residential dwelling." *Id.* at 1199. The court refused to construe the latter language as limiting the generality of the preceding language, explaining that "in search warrants there is no place for '[t]echnical requirements of elaborate specificity once executed under common law pleadings.'" *Id.* at 1200 (citing *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965)). The Court further argued that "[i]t is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Napoli,* 530 F.2d at 1200 (citing *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760 (1925) (internal quotations omitted)). *Compare United States v. Asselin,* 775 F.2d 445, 447 (1st Cir.1985) (term "premises" included disabled car parked near carport); *United States v. Griffin,* 827 F.2d 1108, 1114–15 (7th Cir. 1987); *United States v. Bulgatz,* 693 F.2d 728, 730 n. 3 (8th Cir.1982) ("fact that affiant had crossed out the words 'motor vehicle' on the search warrant application did not preclude search of an automobile on the premises, but only indicated that the general object of the search was the 'premises,' not the automobile.").

In the case at bar, however, the court is aware that the search warrant, while describing the location of the place to be searched as "3 Perrine Street Apt 1 [sic]," Search Warrant, Exh. 3, attached to Govt.'s Response, Doc. 218, contained no language authorizing the search of the "premises". Nonetheless, the court need not conclude that the search of the vehicle did not come within the scope of the warrant merely because the warrant failed to use either the appropriate general description, such as "premises", or a particularized description specifying the car to be searched. Although the better practice would be to include a description of the vehicle as well as the premises in the warrant, *See* 2 W. LaFave, *Search and Seizure* § 4.10(c), at 666–69 (1996); *United States v. Percival,* 756 F.2d 600, 612 (7th Cir.1985), the court does not conclude that the practice is required in each instance under the Fourth

Amendment. The court holds that the search did not exceed the scope of the warrant because it was reasonable under the circumstances to conclude that the object of the search, defendant Lindsey, may have been found in the automobile parked in the rear area of the driveway of the apartment. Officer Murphy knew, at the time of the initial search, that the automobile located in the driveway recently had been under the control of defendant Lindsey, that there was probable cause to believe Lindsey had been at the apartment, and that some activity had been observed at the automobile immediately prior to the execution of the warrant. *See United States v. Delibac,* 925 F.2d 610, 613–14 (2d Cir.1991) (scope of search expanded when officers had good faith belief that they were properly on premises by defendant's consent); *see also United States v. Mendoza–Burciaga,* 981 F.2d 192, 197 (5th Cir. 1992) (plain view seizure valid when officers on premises because fear defendant would flee).

### (3) Reasonable Expectation of Privacy in Place Searched

Defendant Watson asserts that any search of the automobile violated his Fourth Amendment right against a warrantless search because the officers' entry onto the driveway violated his reasonable expectation of privacy in the area. Defendant specifically argues that he had a reasonable expectation of privacy in the driveway area because the driveway falls within the curtilage of his apartment. Def. Watson's Mem. of Law, Doc. 201 at 10–11.

■ Whether a person can claim Fourth Amendment protection in a particular place turns on "whether the person has a legitimate subjective expectation of privacy in that area that society is prepared to accept as objectively reasonable." *United States v. Barrios–Moriera,* 872 F.2d 12, 14 (2d Cir. 1989) (citations omitted). In arguing that he had a reasonable expectation of privacy in the driveway area, defendant lists the four factors used by the Supreme Court in *United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 1140, 94 L.Ed.2d 326 (1987) to determine whether an area comes within the curti-

lage of a person's home. Defendant then asserts, without any discussion, that the driveway to his apartment is "unquestionably" an area in which he has a reasonable expectation of privacy. Def. Watson's Mem. of Law, Doc. 201 at 11. However, the court need not venture into a curtilage analysis where, as in the case at bar, the dwelling in question is a multiple unit apartment building. While the Supreme Court has given apartments status as "homes" for the purposes of the Fourth Amendment, *see Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) (apartment afforded Fourth Amendment status); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (hotel room; same); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (apartment; same), as discussed below the Court has not extended the same status to areas beyond the apartment itself.

■ Similarly, in this Circuit the Court of Appeals has accorded apartments status as homes but has refused to extend Fourth Amendment status to the common areas of apartment buildings. *United States v. Holland,* 755 F.2d 253, 255 (2d Cir.1985) (collecting cases in which Court held common areas not within zone of privacy) ("it is the established law of this Circuit that the common halls and lobbies of multi-tenant buildings are not within an individual tenant's zone of privacy even though they are guarded by locked doors"); *United States v. Barrios–Moriera,* 872 F.2d 12, 14–15 (2d Cir.1989) (citations omitted) (no reasonable expectation of privacy in common hallway); *United States v. Reed,* 572 F.2d 412 (2d Cir.1978). Nor would it be appropriate in the case at bar for the court to attempt to determine the number of units in defendant Watson's apartment building, the number of daily visitors, or the degree to which members of the public are excluded from entering the driveway to the apartment building. In *Holland,* the Second Circuit observed: "we never have held that the common areas must be accessible to the public at large nor have we required a quantified amount of daily traffic through the area as a basis for determining that a common area is beyond an individual's

protected zone of privacy." *Holland,* ·755 F.2d at 256 (collecting cases), *citing inter alia, United States v. Corcione,* 592 F.2d 111, 118 (2d Cir.), *cert. denied,* 440 U.S. 975, 99 S.Ct. 1545, 59 L.Ed.2d 794 (1979) (two apartment house); *United States v. Arboleda,* 633 F.2d 985, 991–92 (2d Cir.1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981) (fire escape).

Other circuits are in agreement that a tenant does not have a reasonable expectation of privacy in an apartment building hallway or other common area. *United States v. Nohara,* 3 F.3d 1239, 1241 (9th Cir.1993) (no reasonable expectation of privacy in hall of high security, high-rise apartment building) (citing *United States v. Concepcion,* 942 F.2d 1170, 1172 (7th Cir.1991) (apartment common areas); *United States v. Eisler,* 567 F.2d 814, 816 (8th Cir.1977) (apartment hallway); *United States v. Cruz Pagan,* 537 F.2d 554, 558 (1st Cir.1976) (apartment garage); *United States v. Anderson,* 533 F.2d 1210, 1214 (D.C.Cir.1976) (rooming house hallway)). *But c.f. United States v. Carriger,* 541 F.2d 545, 552 (6th Cir.1976) (tenant had reasonable expectation of privacy in apartment building common area because officer trespassed to obtain entry).

In the case at bar, the police entered the driveway area located at the rear of defendant Watson's apartment building. After a careful review of the record presently before the court and relevant Second Circuit and Supreme Court decisional law, this court concludes as a matter of law that defendant Watson did not possess a legitimate expectation of privacy in the driveway area of the apartment building in which he resided.

Assuming, for the sake of argument, that defendant Watson had a reasonable expectation of privacy in the driveway area, the court must next determine whether Officer Murphy's actions fell within an exception to the warrant requirement.

*(4) Plain View Doctrine*

■■■■ "The 'plain view' exception to the fourth amendment warrant requirement 'authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment

justification and has *probable cause* to suspect that the item is connected with criminal activity.' " *United States v. Scopo,* 19 F.3d 777, 782 (2d Cir.1994) (quoting *Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983)). A lawful warrantless seizure under this exception requires a showing that: "(1) the officer's initial intrusion was permissible under the fourth amendment; (2) the discovery of the evidence is 'inadvertent'; and (3) the incriminating nature of the evidence is 'immediately apparent'." *Scopo,* 19 F.3d at 782 (quoting *Jenkins,* 876 F.2d at 1088). However, the Supreme Court has since held that evidence need not be inadvertently discovered in order to justify the seizure of evidence under the "plain view" exception. *Horton v. California,* 496 U.S. 128, 130, 141, 110 S.Ct. 2301, 2304, 2310, 110 L.Ed.2d 112 (1990). "Thus, after *Horton,* when at least two 'plain view' requirements are satisfied, the seizure of objects without a warrant will be deemed reasonable." *Ruggiero v. Krzeminski,* 928 F.2d 558, 562 (2d Cir.1991). In essence, *Horton* eliminates the inadvertence requirement to the plain view doctrine.

■■■■ The "plain view" doctrine can be applied only if "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton,* 496 U.S. at 136, 110 S.Ct. at 2308. The court must first determine therefore whether the initial intrusion by the police officer was lawful so that he could justify being in a position to make his discovery of the evidence. In particular, the court must not only determine whether the officer was lawfully present on the property, but whether his lawful presence extended to the point at which the observations were made. First, there can be no doubt, based on the record presently before the court, that Officer Murphy was lawfully present on the property incident to execution of the search warrant of the apartment. Officer Murphy positioned himself in the driveway near the rear entrance to defendant Watson's apartment at 3 Perrine Street. In his affidavit, Officer Murphy averred that he stood by the rear of the apartment until it was secured, to prevent escape by the suspect during the

execution of the search warrant. Affid. of Officer Murphy, attached to Exhs. 4 and 5, Govt.'s Response, Doc. 218. After a search of the apartment revealed that the subject of the search warrant was not in the apartment, Officer Murphy went to the automobile parked in the driveway area located near the apartment's rear entrance to determine whether defendant Lindsey may have "remained in the vehicle in hiding." *Id.* Without entering the vehicle, he looked through the windows to search for defendant Lindsey and observed a cocaine-like substance on the front floor. *Id.* Defendant Watson argues that this "search" of the vehicle was improper because it occurred after the search for defendant Lindsey ended, that is, upon the officers' determination that Lindsey was not inside the apartment. The court disagrees.

Contrary to defendant Watson's mere assertion that Officer Murphy approached the apartment building "after the warrant team concluded its search," Def. Watson's Mem. of Law, Doc. 201, at 12; Affid. of Frank J. Vavonese, attached to Def. Watson's Notice of Motion, Doc. 200, at 26, the evidence presently before the court amply demonstrates that Officer Murphy was present on the property as a member of the search warrant team at the time the search warrant was executed. Because the officers had authority to enter the property to search the apartment, it was reasonable for Officer Murphy to enter the rear driveway of the building in which the apartment was located in order to prevent the subject of the search from escaping through the apartment's rear entrance. The court concludes therefore that Officer Murphy was lawfully on the property, and in particular, on the driveway in the rear area of the apartment building where the automobile in issue was located. In addition, it was reasonable for Officer Murphy to examine the vehicle after learning that defendant Lindsey was not in the apartment. The decision to look into the car was reasonable in light of the activity observed around the vehicle just prior to the search of the apartment. In addition, as evidenced by the affidavit Officer Murphy submitted to obtain the search warrant for defendant Lindsey, the officer knew that the automobile had been loaned to Lindsey several days before the search.

Lastly, the court finds that the incriminating nature of the evidence was "immediately apparent" to Officer Murphy. The officer averred that he observed in plain view a clear plastic bag that appeared to contain crack cocaine. In addition, the court notes that defendant Watson does not allege in this motion papers that the nature of the evidence was not immediately apparent to the observer.

The court concludes that Officer Murphy's observations of contraband fell within the "plain view" exception to warrant requirement under the Fourth Amendment. The court therefore denies defendant Watson's motion to suppress the evidence, or in the alternative for a suppression hearing.

## C. Defendant Chaney.

Defendant Chaney is charged, along with Defendant Raymond Cobb, in three counts of the indictment with conspiracy to possess narcotics, and possession of crack cocaine and methamphetamine, with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2. Defendant Chaney moves the court for suppression of statements and physical evidence. Def. Chaney's Omnibus Motion, attached to Notice of Motion, ("Omnibus Motion") Doc. 210, at 7–9. On March 21, 1995, a warrant was issued for the search of a residence that defendant Chaney and defendant Cobb allegedly shared in Utica, New York. Defendant objects that neither the warrant nor the warrant application make any reference to her, or her alleged participation in criminal activity associated with the instant indictment. According to defendant Chaney, she was not even at the residence when it was searched.

Defendant Chaney first argues that the search, as applied to her, was unconstitutional because it was not issued upon probable cause that she was engaged in criminal activity, and the search warrant failed to "particularize the things to be seized *with respect to her.*" *Id.* at 8–9 (emphasis in original). In particular, the search warrant application, the search warrant and the warrant return do not make any reference to defendant Cha-

ney.[4] In short, defendant Chaney argues that there is "no reasonable nexus" between the allegations contained in the search warrant application, or the contraband found at the residence she allegedly occupied with defendant Cobb. *Id.* at 9.

Defendant Chaney also seeks suppression of certain statements that she allegedly made to police officers while being transported to the police station after her arrest on March 21, 1995. *Id.* at 7. Because her arrest was based upon evidence seized as a result of an illegal search warrant, defendant Chaney claims that the alleged statements must be suppressed as being the fruit of an illegal search. In addition, the alleged statements were made by Ms. Chaney in violation of her Sixth Amendment right to counsel, and without proper Miranda warnings. *Id.*

The government stated during oral argument that it consented to suppression of any statements made by defendant Chaney. The court therefore grants defendant Chaney's motion to suppress her statements made to law enforcement agents.

■ As to defendant Chaney's request for suppression of physical evidence, the court refuses to either suppress the evidence or grant a suppression hearing. First, Defendant Chaney's motion confuses the distinction between probable cause to arrest and probable cause to search. Probable cause to search is present when "there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought," and that there is probable cause to believe that the things sought are evidence of a crime. *Zurcher v. Stanford Daily,* 436 U.S. 547, 556, and n. 4, 98 S.Ct. 1970, 1976–77, and n. 4, 56 L.Ed.2d 525 (1978); *see also Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Probable cause to arrest, in contrast, "requires information justifying a reasonable belief that a crime has been committed and a particular person committed it." *Id.,* 436 U.S. at 556, n. 4, 98 S.Ct. at 1976–77 n. 4; *see also Draper v.*

*United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (probable cause to arrest exists "where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."). In the case at bar, defendant Chaney's complaint that the warrant "did not issue upon probable cause *with respect to her,*" Omnibus Motion, Doc. 210, at 8–9 (emphasis in original), is appropriately characterized as a challenge as to whether there existed probable cause upon which to arrest, and is not a proper basis to challenge whether the search warrant was issued upon probable cause.

■ There also is no merit in defendant Chaney's argument that suppression of evidence is required because the search warrant, including the application, failed to particularize the items to be searched with "with respect to her." As stated above, probable cause to search a place requires that the issuing judge find that "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. Furthermore, "if there is probable cause to believe that particular things are located on particular property, *then it is not necessary that the owner of the property be suspected of crime.*" *United States v. Ponce,* 947 F.2d 646, 650 (2d Cir.1991) (citing *Zurcher,* 436 U.S. at 556, 98 S.Ct. at 1976 ("valid warrants may be issued to search *any* property, whether or not occupied by a third party, at which there is probable cause to believe that fruits, instrumentalities, or evidence of a crime will be found") (emphasis in original)). In summary, the validity of the search warrant at issue did not depend upon whether defendant Chaney herself was suspected of committing a crime.

The court therefore denies defendant Chaney's motion to suppress physical evidence.

---

**4.** The court is left somewhat unguided with regard to defendant Chaney's motion because neither counsel for the defendant nor the government has provided the court with a copy of the warrant in issue. Nor did the government even bother to respond in its papers to defendant Chaney's motion to suppress evidence.

## XVIII. Motion to Consolidate

Defendant Miller moves the court for an order consolidating counts 16 and 18 of the second superseding indictment on the grounds that those counts are identical. Counts 16 and 18 read as follows:

On or about March 21, 1995, in the Northern District of New York, the defendant[s], Tommy Walker, Gary Miller, and Tracey Blackwell, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute crack cocaine (cocaine base), a schedule II controlled substance.

In violation of Title, 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

October 19, 1995 Second Superseding Indictment, Doc. 94, at 16–17.

 "Multiplicity" is the charging of a single offense in more than one count. "The multiplicity doctrine is based upon the double jeopardy clause of the Fifth Amendment, which assures that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *United States v. Fiore*, 821 F.2d 127, 130 (2d Cir.1987). In addition to the double jeopardy problem, the evil in charging a single offense in more than one count is that it may create the impression of more criminal activity on the part of the defendants than in fact may have occurred.

 The government, which did not respond in its papers to defendant's request to consolidate, contended during oral argument that despite the identical language contained in counts 16 and 18, those counts are not multiplicitous because they charge the defendants with possession of contraband discovered in different locations. Although the language of counts 16 and 18 are identical, it may be premature for the court to order those counts consolidated in view of the government's contention that those counts pertain to separate incidents of possession. In this regard, the most appropriate course of action at this point is for the government to distinguish counts 16 and 18 through a bill of particulars. Therefore, the court orders the government to provide defendants Miller and Walker with a bill of particulars that is sufficient to enable the defendants to distinguish the conduct charged in counts 16 and 18 of the second superseding indictment. Defendant Miller's motion to consolidate the counts is denied without prejudice, to enable him to renew the motion if the bill of particulars does not sufficiently distinguish those counts.

## XIX. Audibility Hearing

 Defendants Lindsey and Watson seek suppression of, and an audibility hearing concerning certain tape recorded conversations. Tape recordings are admissible upon a showing of authenticity, accuracy, and relevance. *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir.1977). In addition, a recording that is partially inaudible is generally admissible unless the unintelligible portions are so substantial as to render the entire recording untrustworthy. *United States v. Arango–Correa*, 851 F.2d 54, 58 (2d Cir.1988).

Nevertheless, the United States consented during oral argument to an audibility hearing for these tape recorded conversations. Accordingly, defendants' motion for an audibility hearing is granted.

## XX. Transcripts of Prior Proceedings and Trial

Defendants Lindsey, Cobb and Belgrove seek the transcripts of preliminary proceedings held in this court, in particular the detention hearings, and of recent state court criminal proceedings. With regard to state court proceedings, defendant Belgrove requests a transcript of certain witnesses who testified at Belgrove's recent criminal trial. Defendant Lindsey requests transcripts of police officer testimony at his recent murder trial.

*Griffin v. Illinois* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) and its progeny establish the principle that as a matter of equal protection the state must provide indigent prisoners with the basic tools of an adequate defense *on appeal* when those tools are available for a price to other prisoners. In *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971), the Supreme

Court, held that "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." In assessing an indigent defendant's claim of right to a free transcript, the Supreme Court in *Britt* identified two factors to the determination of need: (1) the value of the transcripts to the defendant's preparation for trial; and (2) the availability of alternative devices. *Britt,* 404 U.S. at 227, 92 S.Ct. at 433; *see also Martin v. Rose,* 525 F.2d 111, 113 (6th Cir.1975). Noting the availability of adequate alternatives to a transcript, the *Britt* Court held that the State was not required, on the particular facts of that case, to provide a transcript to a defendant who was convicted after his previous trial ended in a mistrial.

■■ In the case at bar, the court is faced with the somewhat novel issue of whether the government must provide an indigent defendant in *federal* court with free copy of transcripts from a prior *state* court trial. In addition, the court must determine whether defendants are entitled to copies of transcripts of preliminary proceedings held in this court.

With regard to the state court transcripts, the government agreed to provide defendants with copies of the requested transcripts of the state court proceedings. The government acknowledged during oral argument that there is a relationship between the evidence presented at the defendants' state trials and the government's legal theories in the instant case. The court therefore grants defendants' request for copies of the prior state court transcripts.

With regard to the request for the transcripts of preliminary hearings in the instant case, most of the reported cases pertaining to the subject deal with a state's obligation to provide an indigent defendant with copies of a transcript from a prior trial for the purposes of an appeal, or for the purposes of a defense when a prior trial was reversed on appeal or resulted in a mistrial. *See Britt,* 404 U.S. at 227, n. 1, 92 S.Ct. at 433 n. 1; *see also United States v. Talbert,* 706 F.2d 464 (4th Cir.1983). Of particular relevance to the instant motion, in *Roberts v. LaVallee,* 389 U.S. 40, 43, 88 S.Ct. 194, 196, 19 L.Ed.2d 41 (1967), the Supreme Court concluded that an indigent defendant was entitled to a free transcript of a preliminary hearing for the use at trial. In reaching that result, the Court reasoned that "differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution." *Id.,* 389 U.S. at 42, 88 S.Ct. at 195–96 (citations omitted). *Accord Fullan v. Commissioner of Corrections of State of New York,* 891 F.2d 1007, 1010 (2d Cir.1989) (quoting *LaVallee,* 389 U.S. at 42, 88 S.Ct. at 195–96).

Based upon the Supreme Court's holding in *LaVallee,* the court concludes that defendants, who are indigent, are entitled to a copy of the transcripts of preliminary proceedings in this court. *LaVallee,* 389 U.S. at 43, 88 S.Ct. at 196. However, the court notes that the preliminary proceedings at issue, held before Magistrate Judge Gustave J. DiBianco, were recorded on audiotape. A copy of those proceedings are normally available on audio cassette from the Clerk of the Court for a nominal fee. In that an audio cassette is an adequate alternative to a written transcription, the court grants defendants' requests for a free audio cassette recording of the preliminary hearings held in this court.

### XXI. Leave to File Additional Motions

Lastly, each of the defendants request that they be allowed to make further motions within a reasonable time prior to trial if the government produces information or evidence that requires further motions or hearings. Given that the government has provided, or soon will provide each defendant with all the information it is required to provide up to this point in time, and that it acknowledges its continuing obligation to comply with *Brady,* it is difficult to imagine what further motions a defendant would need to make. Nevertheless, the court grants permission, upon good cause shown, to make further motions in advance of trial.

### CONCLUSION

In summary, the court GRANTS defendants' motions for a bill of particulars to the

following extent. The government must provide a single bill of particulars setting forth the following information. First, with regard to defendant Howard, the government must specify to the extent presently known, what types of narcotics were allegedly stored by defendant Howard, and the dates those narcotics were stored. Second, with regard to defendant Belgrove, the government must specify to the extent presently known, what types of narcotics were allegedly transported by defendant Belgrove, and the dates those narcotics were transported. Third, with regard to defendant Felton, the government must specify to the extent presently known, the dates that the he allegedly acted as a narcotics foreman and seller, and the types of narcotics that were involved in those transactions. Lastly, the government must specify to the extent presently known, what contraband defendants Walker and Miller are charged with possession of, under counts 16 and 18 of the indictment, sufficient to enable those defendants to distinguish the offenses charged under those counts.

Further, defendants' motions for disclosure of the identity of confidential informants that the government intends to call as witnesses at trial, and for exculpatory evidence and impeachment material are DENIED. Defendants' motions for disclosure of additional identification evidence are DENIED WITHOUT PREJUDICE. Defendants' motions for discovery of co-conspirators' statements are GRANTED, consistent with the court's opinion above. The court RESERVES until the time of trial its decision on defendants' requests for extra peremptory challenges. Defendants' motions for early disclosure of Jencks material and production of witness lists in advance of trial are DENIED. Defendants' motions for preservation of government agents' notes is GRANTED, and the government is hereby ordered to advise the appropriate law enforcement agents to retain rough notes. Defendants' motions for severance are DENIED. Defendants' motions for discovery of electronic monitoring evidence are DENIED WITHOUT PREJUDICE. Defendants' motions to dismiss the indictment and for disclosure of grand jury transcripts are DENIED. Defendants' request for a hearing to determine the admissibility of co-conspirators' statements is DENIED. Defendants' motions for discovery under FRCP 16, disclosure of any character evidence under FRCP 404(b), and disclosure of prior bad acts or convictions under FRE 609 are DENIED. Defendant Belgrove's motion for a suppression hearing is GRANTED. Defendant Watson's motions for suppression of evidence or, in the alternative, for a suppression hearing are DENIED. Defendant Chaney's motion to suppress certain statements is GRANTED. Her motions to suppress physical evidence or, in the alternative, for a suppression hearing are DENIED. Defendant Miller's motion to consolidate counts 16 and 18 of the indictment is DENIED WITHOUT PREJUDICE. Defendant Lindsey and Watson's motion for an audibility hearing is GRANTED. Defendants Lindsey, Cobb and Belgrove's motions for copies of transcripts of prior proceedings are GRANTED, consistent with the court's opinion above. Lastly, defendants' motions for leave to file additional motions are GRANTED, upon good cause shown.

It is so Ordered.