UNITED STATES of America,
Plaintiff,

v.

Mark ALLEN and Karen
Allen, Defendants.

No. 5:01–CR–554 (HGM).

United States District Court,
N.D. New York.

Oct. 20, 2003.

232

Glenn T. Suddaby, United States Attorney for the Northern District of New York (Lisa M. Fletcher, Esq., Assistant United States Attorney, of Counsel), Syracuse, NY, for Plaintiff.

James C. Hopkins III, Esq., Syracuse, NY, for Defendant Mark Allen.

James H. Medcraf, Esq., Syracuse, NY, for Defendant Karen Allen.

## MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

### INTRODUCTION

Currently before the court are defendants' criminal omnibus motions for relief.[1] On December 19, 2001, a grand jury returned a two-count Indictment against defendants Mark Allen and Karen Allen. Count One of the Indictment charges defendants with conspiring to manufacture, distribute and possess with intent to distribute marijuana from 1992, up to and including September 11, 2001, in the Northern District of New York. Count One also provides notice that the total number of marijuana plants involved in the conspiracy exceeded 1,000 units, thereby implicating the enhanced penalty provisions of 21 U.S.C. § 841(b)(1)(A). Count Two charges defendants with knowingly and intentionally manufacturing more than 100 marijuana plants in or about September 2001. Lastly, the Indictment contains a forfeiture allegation seeking, *inter alia,* defendants' forfeiture of three real estate properties and numerous items used in their marijuana manufacturing process. *See* Dkt. No. 1, Indictment.

Defendant Mark Allen moves: (1) for an order pursuant to Rule 16(a)(1)(A)-(E) of the Federal Rules of Criminal Procedure granting inspection and discovery of defendant's statements, prior record, material documents and tangible objects, reports of examinations and tests, and expert witness testimony under Rules 702, 703, and 705 of the Federal Rules of Evidence; (2) for an order pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure granting a Bill of Particulars with respect to Count One of the Indictment; (3) for an order pursuant to *United States v. Konefal,* 566 F.Supp. 698 (N.D.N.Y. 1983) and Rule 16(a)(1)(A) for discovery of co-conspirator statements; (4) for an order pursuant to Rule 12 of the Federal Rules of Criminal Procedure and *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) to compel the government to reveal the identity of any informants; (5) for an order pursuant to Rule 104 of the Federal Rules of Evidence and *United States v. James,* 590 F.2d 575 (5th Cir.1979) for a pre-trial hearing regarding the admissibility of co-conspirator statements; (6) for an order pursuant to Rules 403 and 404(b) of the Federal Rules of Evidence directing the government to provide reasonable notice (seven days), in advance of trial, of its intent to offer defendant's character evidence; (7) for an order pursuant to Rule 609 of the Federal Rules of Evidence directing the government to provide reasonable notice (seven days), in advance of trial of its intent to offer evidence of defendant's prior criminal convictions as well as those of any potential witnesses; (8) for an order pursuant to *United States v. Cannone,* 528 F.2d 296 (2d Cir.1975) directing the government to provide a witness list reasonably in advance (seven days) of trial and a daily witness list; (9) for an order pursuant to Rule 12(d)(2) of the Federal Rules of Criminal Procedure directing the government to provide notice of its intent to

---

1. Unfortunately, according the government, defendants have ignored the mandate of L.R.Cr.P. 12.1(b): "No motion to compel discovery shall be heard unless the attorney for the moving party files with the court, simultaneously with the filing of the moving papers, a notice stating that the moving party has conferred and discussed in detail with the opposing party the issue between them in a good faith effort to eliminate or reduce the area of controversy and to arrive at a mutually satisfactory resolution." The government represents that defendants have not "voiced their concern to the government regarding any discovery issues." *See* Dkt. No. 33, Government's Reply Mem. at 2–3 n. 1.

use (in its evidence in chief at trial) any evidence, which defendant may be entitled to discover under Rule 16; (10) for an order pursuant to 18 U.S.C. § 3504 directing the government to disclose the existence of any electronic surveillance; (11) for an order pursuant to *United States v. Feola,* 651 F.Supp. 1068 (S.D.N.Y.1987) for preservation of notes of law enforcement officials; (12) for an order pursuant to 18 U.S.C. § 3500 (Jencks Act) for early disclosure of Jencks material; (13) for an order pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) for disclosure of all exculpatory material; (14) for an order pursuant to Rule 24(b) of the Federal Rules of Criminal Procedure to grant additional peremptory challenges and permit defendant to exercise them separately from his co-defendant; (15) for an order pursuant to Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) directing the government to disclose information relative to the identification procedures it employed; (16) for an order allowing defendant to join in the motion(s) of any other attorney or co-defendant submitting motion(s); (17) for an order authorizing the suppression of all evidence seized at the three search sites and a dismissal of all charges leveled against defendant; and, (18) an order pursuant to Rule 12(f) of the Federal Rules of Criminal Procedure allowing defendant to bring such further motions as he deems appropriate pending review of the discovery material provided by the government in response to defendant's omnibus motion. *See* Dkt. No. 29, Notice of Mot.

Defendant Karen Allen moves: (1) for an order directing a Bill of Particulars; (2) for an order pursuant to Rules 702, 703 and 705 of the Federal Rules of Evidence directing the government to disclose any expert witness testimony; (3) for an order

pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) requiring the disclosure of exculpatory evidence; (4) for an order pursuant to *United States v. Konefal,* 566 F.Supp. 698 (N.D.N.Y.1983) requiring the disclosure of co-conspirator statements; (5) for an order directing disclosure of confidential informants' background information; (6) for an order requiring early disclosure of Jencks material; (7) for an order pursuant to *United States v. Cannone,* 528 F.2d 296 (2d Cir.1975) directing the government to provide a witness list reasonably in advance of trial; (8) for an order pursuant to Rule 24(b) of the Federal Rules of Criminal Procedure directing additional peremptory challenges and permitting defendant to exercise them separately from her co-defendant; (9) for an order requiring disclosure of identification evidence; (10) for an order granting permission to join in co-defendant's motion(s); (11) for an order suppressing the admission into evidence of all items seized at the three search sites; (12) an order dismissing all charges against defendant; and, (13) an order granting such other and further relief as the court may deem proper. *See* Dkt. No. 27, Notice of Mot.

## BACKGROUND

On July 9, 2001, an investigator at the Niagara Mohawk Power Corporation ("Niagara Mohawk") received information from a confidential informant ("CI") regarding the theft of electricity at 769 Center Street, Cleveland, New York ("769 Center Street"). *See* Dkt. No. 33, Government's Reply Mem. at 3. The Niagara Mohawk account at this address is in the name of defendant Karen Allen. During the investigation that followed the receipt of this information, Niagara Mohawk investigators learned from the New York State Police that Karen Allen is the wife of Mark

Allen, and that they both lived at 7834 Kneeskern Road, Cicero (Bridgeport), New York ("7834 Kneeskern Road"). In addition, Niagara Mohawk investigators learned that Mark Allen held a Niagara Mohawk account at 323 Mellon Road, Williamstown, New York ("323 Mellon Road"). Niagara Mohawk investigators found evidence through the two houses' outside meters that the electrical output to the houses was much greater than the metered electrical output. *See* Dkt. No. 33, Government's Reply Mem. at 3–4.

After discovering the disparity between actual electrical output and metered electrical output, Niagara Mohawk investigators brought their findings to the attention of the New York State Police so that a search warrant could be issued for the properties located at 769 Center Street and 323 Mellon Road in order to determine to where the electrical power was being diverted. Investigator Douglas P. Davis, of the New York State Police, applied for two search warrants, and on September 11, 2001, at approximately 8:50 a.m., the Honorable Walter Hafner, Jr., of the Amboy Town Court, issued search warrants for 769 Center Street and 323 Mellon Road. The search warrants extended to "the premises located at [both properties], and any and all buildings, outbuildings, curtilage, sheds, storage areas and outdoor areas that it is determined that power has been diverted to, which are located on said property." *See* Dkt. No. 33, Government's Reply Mem. at 4. The search warrants continued by describing the property sought as "any apparatus, implements, and/or utensils utilized to obtain, divert or use power which has been illegally obtained." *Id.* at 4. Notably absent is any mention of marijuana.

New York State Police Investigators, with the assistance of Niagara Mohawk employees, executed the search warrants and determined that the lines indicating theft of power went into the buildings located on each of these two properties. After such determination, investigators entered the buildings in an attempt to find where within the buildings the theft of power was ultimately being utilized. Upon entering the buildings, investigators found extensive marijuana growing operations. Specifically, at 323 Melon Road, investigators found, *inter alia*, large quantities of marijuana, growth lights, fans, chemicals and other apparatus used in the indoor growing of marijuana, all of which were in plain view. Similarly, with respect to 769 Center Street, investigators observed, in plain view, large quantities of marijuana, growth lights, fans, chemicals and other apparatus used in the indoor growing of marijuana. *See* Dkt. No. 33, Government's Reply Mem. at 5–6.

After their discovery of the marijuana and related effects, investigators amended their search warrant applications in order to receive authority to search for any marijuana, apparatus, implements, and/or utensils used to grow marijuana as well as any records, both written and/or recorded, and any monies or proceeds used in conjunction with the crime of unlawfully possessing and/or growing marijuana. Again on September 11, 2001, the Honorable Walter Hafner, Jr., of the Amboy Town Court, issued a new search warrant at approximately 4:00 p.m. After executing the new search warrants at both properties, investigators uncovered evidence sufficient to raise their suspicions as to the third property located at 7834 Kneeskern Road, Town of Cicero (Bridgeport). Thereafter, investigators obtained a search warrant for this third property, which directed them to search "any and all buildings, outbuildings, curtilage, sheds, storage areas and outdoor areas, vehicles or persons present therein, actually or apparently engaged in the use

or possession of marijuana." *See* Dkt. No. 33, Government's Reply Mem. at 7.

In sum, the investigators discovered evidence of marijuana grow operations at all three locations including: 380 marijuana plants; leaves and other debris that tested positive for marijuana; over thirty-five pounds of finished product at the first property; over 1,400 grams of marijuana at the second property; and, an additional quantity of marijuana at the third property. In addition, investigators recovered marijuana growing equipment, air conditioners, generators, fans, etc., as well as a collection of *High Times* magazine, a calendar with notes as to growth and harvesting cycles, and handwritten notes pertinent to the marijuana growing operation. Moreover, investigators recovered thirty-one firearms including handguns, rifles, shotguns, and a Tec–9. *See* Dkt. No. 33, Government's Reply Mem. at 8. The court now turns to defendants' omnibus motions.

## DISCUSSION

### I. Defendants' Motions

#### A. *Permission to Join in Co-defendant's Motions*

Defendants move for an order permitting them to join in each other's respective motions. The issues and events of this case, as they pertain to both defendants, are similar to such a degree that the government did not object to this motion and responded to defendants' other individual motions as if they were motions made on behalf of both individual defendants. In fact, many of defendants' individual motions are duplicative of one another. Thus, as an initial matter, defendants' motion for an order permitting them to join in each other's motions is GRANTED, and for purposes of this Memorandum—Decision and Order, the court will address the individual defendant's motions jointly.

#### B. *Discovery*

Defendants move under Rule 16(a)(1)(A)-(E) of the Federal Rules of Criminal Procedure for an order granting inspection and discovery of defendants' statements and prior records, material documents and tangible objects, reports of examinations and tests, and expert witness testimony under Rules 702, 703, and 705 of the Federal Rules of Evidence. Specifically, defendants seek a written summary of any expert witness testimony the government intends to use under Rules 702, 703, and 705 of the Federal Rules of Evidence during its case in chief at trial, including a description of the witnesses' opinions, the basis of those opinions, method(s) of analysis, and the witnesses' qualifications. The government has assured the court that it has provided defendants with full discovery of all evidence to which they are entitled, including all aspects of the searches and follow-up investigation, and thereby submits that it has complied with the letter and spirit of Rule 16. The government is also mindful of its continuing obligation to promptly produce additional discovery should any arise. Based upon these assurances, defendants' motion is DENIED without prejudice and with leave to renew if at the time of trial it appears that the government has not satisfied its obligations.

#### C. *Bill of Particulars*

Defendants seek a Bill of Particulars specifying items, too numerous to list here, pertaining to the crimes defendants allegedly committed. In response to defendants' motion for a Bill of Particulars, the government asserts that the Indictment sets forth the requisite particulars: each count alleges a date, location, and substance of the conduct charged while the forfeiture allegation clearly sets forth its

basis and the properties sought thereunder.

A bill of particulars apprises a defendant of "the nature of the charges against him, so that he can adequately prepare a defense, avoid prejudicial surprise at trial, and plead double jeopardy in that or any subsequent related action." *United States v. Walker*, 922 F.Supp. 732, 738 (N.D.N.Y.1996) (quoting *United States v. Greater Syracuse Bd. of Realtors, Inc.*, 438 F.Supp. 376, 379 (N.D.N.Y.1977)). A bill of particulars, however, also confines the Government's evidence at trial to the particulars furnished. Thus, the court must balance restricting the Government's proof against protecting the defendant from surprise. *See United States v. Payden*, 613 F.Supp. 800, 816 (S.D.N.Y.1985). A bill of particulars should be granted where necessary: (1) to inform the accused of the charges against him with sufficient precision to enable him to prepare his defense and avoid surprise, and (2) to enable him to plead his acquittal or conviction in bar of any further prosecution for the same offense. *See United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988). However, "where the information sought is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *United States v. Lonzo*, 793 F.Supp. 57, 60 (N.D.N.Y.1992). In determining whether a bill of particulars is warranted, the court should consider the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise available to the defendants. *United States v. Diaz*, 675 F.Supp. 1382, 1390 (E.D.N.Y.1987) (quoting *United States v. Shoher*, 555 F.Supp. 346, 349 (S.D.N.Y.1983)).

Defendants, generally, seek the date upon which they entered the conspiracy, the means by which they entered into the conspiracy, the names and addresses of all co-conspirators whether indicted or unindicted, the quantity of drugs attributable to each defendant, whether the government utilized any scientific analysis, measurement or count, and if so who conducted the analysis, at what time and by what method.

"[D]emands for particulars regarding the formation of a conspiracy have almost universally been denied. Matters such as the exact time and place of the overt acts and names of the persons present are not properly the subject of a bill of particulars." *Walker*, 922 F.Supp. at 739 (citing *United States v. Wilson*, 565 F.Supp. 1416, 1438 (S.D.N.Y.1983)). Defendants are not entitled to discover through a bill of particulars the locations in addition to those listed in the indictment at which they are alleged to have violated the statute, where the information already made available to defendants is sufficient to enable them to properly prepare for trial. *United States v. Feola*, 651 F.Supp. 1068, 1133 (S.D.N.Y. 1987). Additionally, defendants are not "entitled to receive all documents which would in any way tend to verify the meetings or activities described in the overt acts; the exact time and place of each overt act in the indictment; the names and addresses of persons present during the meetings; nor all meetings at which the defendant was present." *Id.* (citing *Wilson*, 565 F.Supp. at 1438). Moreover, "detailed evidence of a conspiracy is generally unavailable to defendants through a bill of particulars, and overt acts in furtherance of the conspiracy need not be disclosed." *Walker*, 922 F.Supp. at 739 (citing *United States v. DeFabritus*, 605 F.Supp. 1538, 1548 (S.D.N.Y.1985)).

Here, in view of the principles set forth above, the court reviewed each of defendants' specific requests and finds, for the most part, that between the Indictment and the discovery that the govern-

ment has already provided, defendants possess information sufficient to prepare a defense with reasonably diligent effort, avoid unfair surprise, and prepare a double jeopardy pleading, if applicable. Each count advises defendants as to the time, place, and substance of the conduct charged. Nevertheless, to the extent that the government possesses the following particular information and has not yet disclosed it, the court directs the government disclose three particulars to defendants: (1) the government must disclose the identities of all persons the government claims to have been co-conspirators during the course of the alleged conspiracy, regardless of whether they have been indicted; (2) the government must disclose whether any such co-conspirator is in federal, state or protective custody; and, (3) the government must disclose the amount of controlled substance attributable to each individual defendant. Defendants' motion for a Bill of Particulars is GRANTED as set forth above.

### D. Co–Conspirator Statements

■ Defendants ask the court to order disclosure of both named and unnamed co-conspirators' statements and to conduct a hearing as to their admissibility. The general rule is that statements made by co-conspirators are *not* discoverable under Rule 16(a). *See United States v. Perce-*

vault, 490 F.2d 126 (2d Cir.1974). This court, however, has held that under a broad reading of Rule 16, statements of co-conspirators made during the course of and in furtherance of a conspiracy, which are attributable to a defendant, are discoverable by that defendant. *See United States v. Konefal,* 566 F.Supp. 698, 706 (N.D.N.Y.1983). The court's holding in *Konefal* that co-conspirators' statements are discoverable applies only where the government does not intend to call the co-conspirators as witnesses at trial. Where the government does intend to call such co-conspirators as witnesses, the Jencks Act controls and prevents the disclosure of government witnesses' statements, including those of co-conspirators, until the witness testifies. *See id.*

Here, defendants' request statements of their alleged co-conspirators, both of whom are named as defendants in the indictment. The court adheres to its previous holding in *Konefal* and finds that fairness and the interest of justice require the government to disclose the statements of the alleged co-conspirators who are named as defendants and who the government will not call as witnesses.[2] Defendants' motion is GRANTED and the government must disclose to each defendant all the statements in its possession made during the course and in the furtherance of the conspiracy by

---

**2.** The court is aware that its holding in *Konefal* has been challenged by other courts within the Northern District of New York as well as various Circuit Courts of Appeal. *See United States v. Brunson,* 1998 WL 146271, at *2 (N.D.N.Y. March 26, 1998) (denying disclosure of co-conspirators' statements); *United States v. Lopez,* 1997 WL 205294, at *3 (N.D.N.Y. April 23, 1997) (same); *United States v. Rio,* 1997 WL 627548, at *2 (N.D.N.Y. October 8, 1997) (same); *United States v. Tarantino,* 846 F.2d 1384, 1417–18 (D.C.Cir.1988); *United States v. Orr,* 825 F.2d 1537, 1541 (11th Cir.1987); *United States v. Roberts,* 811 F.2d 257, 258–59 (4th Cir.1987).

The government cites *In re United States,* 834 F.2d 283, 286–287 (2d Cir.1987) in support of its position that co-conspirator statements are not discoverable. The court recognizes that the *Brunson, Lopez,* and *Rio* opinions cited *In re United States,* as precedential authority weighing against the holding of *Konefal.* For a detailed discussion of the Second Circuit's holding in *In re United States* as it relates to *Konefal, see United States v. Murgas,* 967 F.Supp. 695, 713–16 (N.D.N.Y.1997) (finding the holding of *In re United States* "inapposite" to *Konefal* ).

those defendants the government does not intend to call as witnesses at trial.

### E. Admissibility Hearing

■ Defendants request a pre-trial hearing pursuant to *United States v. James,* 590 F.2d 575 (5th Cir.1979) to determine whether a conspiratorial relationship existed between them. Defendants' motion is DENIED. As the court admonished in *United States v. Feola,* "a motion for a James hearing in this Circuit must be regarded as frivolous. Defendants who want *James* hearings should so conduct their business as to be tried in the Fifth or Eleventh Circuits." 651 F.Supp. 1068, 1130 (S.D.N.Y.1987). "In the Second Circuit, the court admits out-of-court statements by alleged co-conspirators conditionally subject to a finding by the court at the *close* of the government's case that the government has met its burden of proof that (1) there was a conspiracy (2) both declarant and defendant were members of the conspiracy and, (3) the statements were made during the course of and in furtherance of the conspiracy." *United States v. Brunson,* 1998 WL 146271, at *3 (N.D.N.Y. March 26, 1998) (citing *United States v. Tracy,* 12 F.3d 1186, 1199 (2d Cir.1993)).

### F. Disclosure of Confidential Informants' Identities

■ Defendants seek compulsory disclosure of information concerning the identity and background of confidential informants. To encourage knowledgeable persons to communicate information about wrongdoing to the government, the law recognizes a privilege to withhold the identities and background of informants who are promised confidentiality. *Roviaro,* 353 U.S. at 59, 77 S.Ct. at 627. The privilege, however, must give way if the disclosure of an informant's identity, or the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a case. In deciding a motion to reveal an informant's identity, the court must "balance the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* 353 U.S. at 60–61, 77 S.Ct. at 627–28.

■ In *United States v. Russotti,* the Second Circuit set forth the standard to determine whether such disclosure is compelled: "an informant's identity need not be disclosed unless 'essential to the defense' . . . Disclosure has been required at trial where the informant is a key witness of a participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." 746 F.2d 945, 949–50 (2d Cir.1984); *United States v. Saa,* 859 F.2d 1067, 1073–75 (2d Cir.1988). The burden is on defendants to establish the need for revealing the identity of an informer. *See Cullen v. Margiotta,* 811 F.2d 698, 715–16 (2d Cir.1987). "Nonetheless, even when the defendant can make such a showing, courts in this Circuit have held that the defendant is not entitled to pretrial identification of an informant where (1) the Government planned to have the informant testify at trial, thereby requiring the government to turn over *Jencks* material, and (2) defendant did not show a particularized need for pretrial disclosure." *United States v. Walker,* 922 F.Supp. 732, 740 (N.D.N.Y.1996) (citing *United States v. Hana,* 1994 WL 323642, at *4 (S.D.N.Y. July 5, 1994)). Lastly, a defendant may not be entitled to disclosure even though he had shown that the informant was a participant in and a witness to the crime charged. *United States v. Jimenez,* 789 F.2d 167 (2d Cir. 1986).

■ After careful review of defendants' arguments, the court is unable to

conclude that the disclosure of the confidential informants' identities is justified in this case. Defendants have not identified a sufficiently particularized need that justifies access to the identity of the confidential informants prior to their testimony. The court is also aware of the retaliatory violence directed against informants in drug cases. *See United States v. Ward,* 722 F.Supp. 1523, 1525 (S.D.Ohio 1988). Bearing this in mind, defendants' motion for disclosure of the identity of confidential informants that the government intends to call as witnesses at trial is DENIED.

### G. Similar or Extrinsic Act Evidence

Defendants seek an order pursuant to Rules 403 and 404(b) of the Federal Rules of Evidence directing the government to disclose, seven days in advance of trial, all character evidence, or evidence of prior crimes, wrongs or bad acts of defendants or government witnesses that the government intends to use at trial. The government indicates that it intends to offer as evidence only those acts committed by defendants that occurred within the framework of the charged conspiracy. Therefore, defendants' request is DENIED.

### H. Use of Prior Convictions

Defendants move for an order pursuant to Rule 609 of the Federal Rules of Evidence directing the government to provide reasonable notice, seven days, in advance of trial, of its intent to offer evidence of a conviction of a crime for any of the witnesses or defendants. The government asserts that is has produced all evidence of defendants' prior criminal records and does not intend to use evidence of other convictions or crimes for these defendants. The government assures the court that should it become aware of evidence of previously unknown crimes committed by either defendant, it will provide notice of its intent to use such prior crimes against one or both defendants. Based upon these assurances, defendants' motion is DENIED.

### I. List of Witnesses

Defendants request disclosure of a witness list one week in advance of trial as well as a daily list of the names of the witnesses the government intends to call each day at trial, at least one day in advance. In addition, defendants request an order directing the government to provide them with a list of the names and addresses of each person the government interviewed as a prospective, possible or potential witness for trial. The government opposes defendants' motion noting that at the time designated by the court's pretrial order, it will provide the pretrial questionnaire, which indicates the names of potential government witnesses.

■ While the general discretion of district courts to compel the government to identify its witnesses is widely acknowledged, in the Second Circuit, the government may be required to produce a witness list only if defendant makes a "particularized showing of need." *United States v. Bejasa,* 904 F.2d 137, 139 (2d Cir.1990); *see United States v. Cannone,* 528 F.2d 296, 301 (2d Cir.1975). As justification for their request, defendants argue that they have limited resources for investigation and preparation and that given the large number of potential witnesses, counsel does not wish to be burdened by the labor of transporting the witnesses' files to court on a daily basis. Defendants fail to make a particularized showing sufficient to require the production of a witness list prior to trial. Therefore, defendants' requests: (1) for production of a witness list in advance of trial; (2) a daily witness list; and, (3) a

list of potential witnesses are hereby DE-NIED.

### J. Peremptory Challenges

 Defendants seek additional peremptory challenges under Rule 24(b) of the Federal Rules of Criminal Procedure and the opportunity to exercise their individual challenges separately. For the felonies charged here, Rule 24(b) of the Federal Rules of Criminal Procedure provides for six peremptory challenges for the government and ten for the defendants jointly. Of course, the court has broad discretion to change this allotment and provide additional peremptory challenges. Likewise, the court may determine whether peremptory challenges should be exercised jointly or separately. *United States v. Aloi*, 511 F.2d 585, 598 (2d Cir.1975). Moreover, the award of additional peremptory challenges may be conditioned on defendants' assent that the government also receive additional challenges.

The court is inclined to increase the number of peremptory challenges for the defendants upon their stipulation that the government receive a proportional increase. Final decision on this issue is RESERVED, however, as well as the issue of whether the defendants should be allowed to exercise these challenges separately, until such time as the parties file their final pretrial submissions. At that time, defendants should notify the court whether they would prefer to exercise these challenges individually.

### K. Disclosure of Exculpatory Evidence

#### 1. Disclosure of Brady Material

Defendants request an order directing the government to disclose all exculpatory materials. Disclosure of evidence tending to exonerate a defendant is mandated by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). It is well-settled in the Second Circuit, however, that *Brady* does not establish a general right of pretrial discovery, nor does it give rise to any pretrial remedies. *Walker*, 922 F.Supp. at 741. The government indicates that it is aware of its obligations under *Brady* and asserts that it will make available exculpatory material. Similarly, *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), mandates the disclosure of impeachment-type materials relating to the government's witnesses, which is properly disclosed when the witness is called to testify at trial. *Walker*, 922 F.Supp. at 741. The government has promised to produce *Giglio* material at the time of trial. Accordingly, because the government is not required to do anymore at this time, the court DE-NIES defendants' motion for disclosure of exculpatory evidence and impeachment material without prejudice should another motion become necessary.

#### 2. Identity Evidence

Defendants request an order directing the government to furnish them with all information relative to any identification procedures used in this prosecution. The government asserts that it has already produced all photographs used in the prosecution, and that it will continue to produce discovery that may impact upon any identification pertaining to defendants if it becomes available. Furthermore, the government indicates that it is unaware of any failure to identify a defendant by any witness. Based upon the government's assurances, defendants' motion is DENIED.

### L. Suppression of Evidence Seized Pursuant to Search Warrants

Defendants move for an order suppressing all evidence derived from the search warrants executed on defendants' three properties. Defendants argue that the ini-

tial search warrants authorizing law enforcement agencies to search for power diversion implements were defective because the underlying facts used by law enforcement agents in their application for said warrants were obtained through a series of warrantless searches and illegal entries upon the subject premises.

The burden of proof in a motion to suppress physical evidence is on the movant seeking the suppression. *Walker*, 922 F.Supp. at 750 (citation omitted). At the outset, the court, therefore, presumes that the affidavits supporting the search warrants are valid. *Franks v. Delaware*, 438 U.S. 154, 155–56, 171–72, 98 S.Ct. 2674, 22676, 2684, 57 L.Ed.2d 667 (1978). The burden of proof shifts, however, once the movant establishes some basis for the motion. The standard of proof on the party who carries the burden is preponderance of the evidence. *Walker*, 922 F.Supp. at 750 (citation omitted). Defendants' arguments fail under this standard.

### 1. Niagara Mohawk's Investigation

Defendants make particular note of New York State Police reports indicating that a New York State Police Investigator and a Niagara Mohawk Security Investigator flew over defendants' property and residence located at 769 Center Street on July 31, 2001, and took aerial photographs of said property and residence. *See* Dkt. Nos. 28 and 30, Defs.' Mem. of Law. Defendants speculate that the aircraft used by the investigators was equipped with thermal imaging equipment, and that the investigators made a thermal scan of the residence in contravention of *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (holding that sur-

veillance which employs thermal imaging equipment to explore the details of a home that would previously have been unknowable without physical intrusion constitutes a search, which is presumptively unreasonable without a warrant).[3] Defendants, therefore, contend that the alleged warrantless thermal imaging scan tainted all subsequent searches and proceedings in this matter. *See* Dkt. No. 28, Defs.' Mem. of Law.

Defendants argue that the alleged thermal scan confirmed investigators' suspicions that defendants were conducting marijuana grow operations within their residence. With their suspicions confirmed, defendants contend that New York State Police proceeded to engage in an elaborate subterfuge to gain access to the inside of defendants' premises. On August 8, 2001, defendants contend that Niagara Mohawk investigators trespassed defendants' property at 769 Center Street, and installed power monitors on the pad mount transformer. Defendants submit that New York State Police reports indicate that Niagara Mohawk investigators again trespassed upon defendants' property at a later date to inspect the power monitor, whereupon they discovered and noted discrepancies between the power output measured by the pad mount transformer and the power output measured by the house meter. Defendants contend that similar trespasses occurred at 323 Mellon Road. Defendants argue that New York State Police investigators used these fruits of the poisonous tree in their applications for search warrants of defendants' residences. *See* Dkt. Nos. 28 and 30, Defs.' Mem. of Law.

---

**3.** It is well-established that conventional aerial surveillance of private homes and surrounding areas does not constitute a search. *See California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); *Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989).

On September 11, 2001, New York State Police obtained search warrants for defendants' properties at 769 Center Street, Cleveland, New York, and 323 Mellon Road, whereby they used backhoes to unearth the underground lines which connected the transformers to the residences. The digging operation disclosed additional wiring off of the underground line that bypassed the meter and entered the residence. *See* Dkt. No. 27, Medcraf Aff. at ¶ 34. After having traced the lines into the residences' interiors, investigators entered the residences, discovered marijuana grow operations and promptly amended their search warrants to include evidence of marijuana grow operations. Based upon their discoveries, New York State Police applied for a third search warrant for defendants' property at 7834 Kneeskern Road where they subsequently seized various items of personal property. *See* Dkt. No. 33, Government's Mem. of Law at 28–29.

Even assuming *arguendo* that the search warrants were valid, defendants contend that in executing the search warrants, New York State Police Investigators exceeded their scope. The initial search warrant for each property pertained only to an alleged theft of power from Niagara Mohawk and authorized investigators to search for evidence of the obtaining, use or diversion of power including any apparatus, implements, and/or utensils utilized to illegally obtain electrical power. Defendants contend that the warrants did not allow for investigators to enter the interior of defendants' residences where evidence used in this prosecution was later recovered. *See* Dkt. No. 28, Defs.' Mem. of Law at 10.

■ While defendants' theory is perhaps plausible, they have failed to present any evidence to support their theory and instead invite the court to play along in a game of speculation. The court, however, declines the invitation. As previously noted, the aerial photographs taken of the subject properties by investigators do not constitute a search. More importantly, however, defendants have failed to present *any* evidence or testimony to support their claim that investigators used thermal imaging equipment.

Second, defendants mistakenly assert that Niagara Mohawk investigators trespassed upon defendants' property. On July 9, 2001, a Niagara Mohawk agent commenced an investigation into the theft of electricity at 769 Center Street. As part of the investigation, on July 31, 2001, the agent traveled to the property and observed the electric entrance to the residence noting that the electric service was an underground primary single phase service from pole number 82–1 to a pad mount transformer located adjacent to the residence's driveway. The agent further noted, that from the pad mount transformer, the electric secondary service ran underground to an outside meter channel attached to the residence. In addition, as part of the investigation, on August 8, 2001, the agent arranged for a field test by Niagara Mohawk's Meter and Test Department, including the installation of a voltage and amperage recorder at the pad mount transformer. The agent accompanied a field technician to the location and observed the installation of the recording device. The test revealed that the amperage at the transformer measured sixty-six amps while the amperage at the meter measured thirty-one amps. The agent also noted that the meter reading was 94436. The agent returned to the property on August 15, 2001, and noted discrepancies between the power output measured at the pad mount transformer and the power output measured at the house meter. The agent again returned to the

property on September 5, 2001, and noted discrepancies between the power output measured by the pad mount transformer and the power output measured by the house meter. The amount of unmetered electricity supplied between August 8, 2001, and September 5, 2001, at 769 Center Street was 8083.2 KWH, with a value of $970. *See* Dkt. No. 33, Government's Mem. of Law, Tab A, Supp. Dep. of Howard E. Allen.

Beginning August 27, 2001, the agent began a similar investigation into the property at 323 Mellon Road, which yielded similar findings. On September 5, 2001, the agent accompanied the field tester who installed a voltage and amperage recorder at the transformer. The recorder measured ninety-two amps while the usage at the house meter measured only twelve amps. *Id.* The investigation having revealed the likely theft of electricity, the Niagara Mohawk agent then enlisted the assistance of the New York State Police to obtain search warrants for the two properties. *Id.* at 26.

■ The actions of the Niagara Mohawk agent and field tester during the course of the investigation do not constitute trespass. Pursuant to New York State Public Service Law § 47, "[a] duly authorized agent of a utility corporation . . . may enter any dwelling, building or other location supplied with . . . electricity by the utility corporation . . . , for the purpose of inspecting and examining the meters, pipes, fittings, wires and other apparatus for regulating, supplying and /or ascertaining the quantity supplied . . . ." Here, both the agent and field technician were duly authorized agents of Niagara Mohawk and they were inspecting the meters and ascertaining the quantity of electricity supplied. Pursuant to New York State Public Service Law § 47, their presence at 769 Center Street and

323 Mellon Road under these circumstances was authorized.

Defendants also suggest that Niagara Mohawk initiated the theft of power investigation at the behest of the New York State Police. *See* Dkt. No. 30, Defs.' Mem of Law. Whether Niagara Mohawk began its investigation of defendants' theft of power at the urging of the New York State Police is beside the point. The New York State Police did not accompany the agent to defendants' properties until after the agent determined that defendants were stealing electrical power. Furthermore, that the New York State Police assisted in applying for and executing the search warrants neither supports an agency argument impacting defendants' Fourth Amendment rights nor requires suppression of the evidence. *See United States v. Cleaveland,* 38 F.3d 1092, 1093 (9th Cir. 1994). *Cleaveland* presents an analogous situation and bears further examination. In *Cleaveland,* defendant appealed the district court's denial of his motion to suppress evidence seized from his house pursuant to a search warrant. The affidavit used by police to obtain the search warrant was based on evidence discovered during a warrantless search conducted by agents of an electrical power company. The electric power company had received an anonymous tip that there was an illegal power diversion and a possible marijuana grow operation at defendant's residence. Typically, when the power company received such a tip, it contacted the local police because of safety concerns. The next day, power company investigators, conducted an investigation at defendant's residence while a police detective waited in a parked car one block away from defendant's residence. The investigation revealed a possible power diversion and based upon this evidence, the police detective prepared an affidavit and obtained a

warrant to search defendant' residence. Police officers executed the search warrant and found evidence of the power diversion as well as several marijuana plants within defendant's residence. Defendant argued that the power company investigators acted as agents of the police when they searched the meter and gathered information subsequently used by the police detective to obtain a search warrant to the house. The Ninth Circuit noted that "where a private party acts as an 'instrument or agent' of the state in effecting a search or seizure, Fourth Amendment interests are implicated." *Cleaveland*, 38 F.3d at 1093 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2048–49, 29 L.Ed.2d 564 (1971)). Because the police knew of and acquiesced in the power company's search of the meter, the question was whether, in performing that search, the power company intended to assist law enforcement efforts or further its own ends. The Ninth Circuit held that the power company had a "legitimate, independent motivation" to further its own ends and that motivation was not negated by any dual motive to detect or prevent crime or assist the police or by the presence of the police nearby during the search:

> while the [power company's investigator] may have had dual motives for conducting the search-to recover money for [the power company's] loss of power on the one hand, and to assist the police in capturing the power thief (and perhaps uncovering a marijuana grow) · on the other-his motive to recover for [the power company's] loss of power was a legitimate, independent motive apart from crime detection or prevention. That motivation was not overridden by the fact the police stood by during the search, and used the fruits of that search to obtain a warrant to search [defendant's] house.

*Cleaveland*, 38 F.3d at 1094. In the instant case, law enforcement did not accompany the Niagara Mohawk agent and field technician, but assisted them in the application for and execution of the search warrants. Whether the Niagara Mohawk investigator had a dual motive in investigating defendants' theft of power is beside the point because the investigation to determine whether the theft of power was occurring was a legitimate, independent motivation which furthered Niagara Mohawk's own ends. The court now turns to the sufficiency of the search warrant applications.

2. **Probable Cause to Issue Initial Search Warrants**

"In determining whether a search warrant is supported by probable cause, a flexible, totality-of-the-circumstances test is employed." *United States v. Feliz–Cordero*, 859 F.2d 250, 252–53 (2d Cir. 1988). Probable cause to search a place is determined by making "a practical commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The "duty of a reviewing court is simply to ensure" that the issuing judge had a "substantial basis for . . . conclud[ing] that probable cause existed." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332 (citations omitted).

As set forth above, the court has determined that Niagara Mohawk's investigation, in both its purpose and execution, was legal and can thus serve as a basis for the factual allegations contained in the affidavits submitted in support of the search warrants. Moreover, the affidavits contain ample information from which one can readily conclude that probable cause exist-

ed to suggest that evidence of a crime would be found at defendants' residences. The affidavits and supporting depositions presented in detail the investigators' findings and contain several observations by the affiants sufficient to support probable cause. First, the affidavits and supporting affidavits note the dates and locations of the investigations. Second, they note that the investigations revealed a "substantial discrepancy" between the power output measured at the transformers and the amount of power recorded at the defendants' meters and describe the tests performed to reveal these discrepancies. Third, the affidavits notes that Niagara Mohawk is the supplier of electrical service to 769 Center Street and 323 Mellon Road and that Niagara Mohawk had not granted permission to make any modifications or connections to secondary wires or to divert electric power around the meter at either location. *See* Dkt. No. 33, Government's Mem. of Law, Tab A, Supp. Deps. of Howard E. Allen.

### 3. Scope and Execution of Initial Search Warrants

"The scope of a search pursuant to a valid warrant is defined by the warrant's description of the premises and the objects of the search, and by the places in which the officers have probable cause to believe those objects may be found." *United States v. Kyles,* 40 F.3d 519, 523 (2d Cir. 1994) (citing *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987)). In *United States v. Ross,* 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982), with respect to the scope of a lawful search, the Supreme Court held that a "lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete

the search." The search warrants for 323 Mellon Road and 769 Center Street authorized the search of the premises, including "any and all buildings, outbuildings, curtilage, sheds, storage areas and outdoor areas that it is determined that power has been diverted to, which are located on said property," for "any apparatus, implements, and/or utensils utilized to obtain, divert or use power which has been illegally obtained." *See* Dkt. No. 33, Government's Mem. of Law, Tab A, Search Warrants.

 Defendants argue that the objects sought pursuant to the initial search warrants were obtained prior to entry into the houses themselves. They contend that the entry into each residence was unnecessary to the investigation of the theft of power investigation because ample evidence of the theft of power had already been uncovered. The government disagrees and asserts that the scope of the search warrants were vital to ascertain the exact end sources of the theft of power. The government suggests, for example, that if investigators had "dug up the lines, and determined that the theft of power did not go to [defendants' residences] then [the residences] would not have been searched." *See* Dkt. No. 33, Government's Mem. of Law at 28. This, as it turns out, was not the case. Investigators determined that the lines indicating the theft of power entered defendants' residences through their foundations below ground level. Thus, it was necessary for investigators to enter the residences to determine ultimate destination of the diverted power. Upon entering the residences, investigators found elaborate marijuana grow operations. Investigators promptly amended their warrant applications to receive authority to search both residences for property unlawful to possess in the form of marijuana and/or other controlled substances and any potential physical evidence that tends to

demonstrate that the offense of Possession of Marijuana or Unlawful Growing of Marijuana had been committed. *See* Dkt. No. 33, Government's Mem. of Law at 28. Under the circumstances, the investigators did not exceed the scope of the search warrants by entering the residences.

### 4. Probable Cause to Issue Amended Search Warrants

█ The affidavits submitted in support of the amended search warrant applications set forth that upon execution of the initial warrants, investigators discovered an underground diversion of electricity via an underground power cable that entered into the residences through their foundations. The affidavits further set forth that upon entering the residences to locate the ultimate destination of the power diversion, investigators observed quantities of marijuana, grow lights, fans, chemicals and other apparatus used in the indoor marijuana growing operations in plain view. The affidavits contained ample information from which one could readily conclude that probable cause existed to suggest that evidence of a crime would be found at defendants' residences. *See* Dkt. No. 33, Government's Mem. of Law, Tab B.

### 5. Scope and Execution of Amended Search Warrants

The amended search warrants for 323 Mellon Road and 769 Center Street authorized the search of the entire buildings for "marihuana, any apparatus, implements and/or utensils utilized to grow marihuana. Any records both written and/or recorded, any monies or proceeds used in conjunction with the crime of unlawfully possessing and/or growing marihuana." *Id.* Investigators did not exceed the scope of the amended search warrants.

### 6. Probable Cause to Issue Search Warrant for 7834 Kneeskern Road

The affidavit in support of the search warrant application for 7834 Kneeskern Road set forth that defendants resided at the property as well as the findings of the previously executed search warrants at 323 Mellon Road and 769 Center Street, most notably that defendants had diverted electrical power to facilitate a large-scale indoor marijuana grow operation. The affidavit also set forth items seized during the warrants' executions, including, numerous grow lights, fans, timers, electrical connectors, chemicals and over ten pounds of marijuana. In short, the affidavit contained ample information from which one could readily conclude that probable cause existed to suggest that evidence of a crime would be found at 7834 Kneeskern Road.

### 7. Suppression Not Justified

█ Here, all of the seizures were made pursuant to valid warrants. Suppression of evidence seized pursuant to a warrant remains an appropriate remedy only if: (1) the judge who issued the search warrant "was misled by information in an affidavit which the affiant knew was false or would have known was false except for this reckless disregard for the truth"; (2) the issuing judge wholly abandoned his judicial role; (3) the affidavits are so obviously lacking in indicia of probable cause that reliance on the warrant is unreasonable; or (4) the warrant is so facially deficient that law enforcement officers cannot reasonably presume it to be valid. *United States v. Leon,* 468 U.S. 897, 923, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984). The court finds none of these circumstances present here and DENIES defendants' motion to suppress the evidence derived from the search warrants executed at 323 Mellon Road, 769 Center Street, and 7834 Kneeskern Road.

## M. Dismissing the Indictment

 Defendants move to dismiss the indictment based on the alleged defects in the investigation and search warrants. Even setting aside the court's disposition of defendants' motion to suppress, it is a well-established rule that an indictment which is valid on its face cannot be challenged on the ground that it was based on inadequate or incompetent evidence. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). An indictment is sufficient when it contains the elements of an offense, notice to the defendant of the charges he must be prepared to meet, and information sufficient to protect the defendant from the risk of double jeopardy. *United States v. Bailey,* 444 U.S. 394, 414, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980). "An indictment need only track the language of the statute and, *if necessary* to apprise the defendant of the nature of the accusation against him, state the time and place in approximate terms." *United States v. Covino,* 837 F.2d 65, 69 (2d Cir.1988). Here, there is no evidence that the Grand Jury acted upon inadequate or incompetent evidence. Therefore, defendants' motion to dismiss the indictment is DENIED.

## N. Disclosure of Expert Witnesses and Testimony

Defendants seek disclosure of the government's expert witnesses and a summary of their testimony. The government has agreed to provide a written summary of expert witness testimony pursuant to Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure. The government indicates that without knowing whether either defendant will go to trial, it is too difficult and premature at this time to determine what expert testimony will be required but has agreed to provide a more detailed summary of expert witness testimony as trial approaches. The government is, however, certain at this time that if there is a trial, it will use the following expert testimony: (1) identifications of the controlled substances tested by the chemists identified in the laboratory reports produced in discovery to testify to the conclusions stated in those reports, including the weight, purity, and substance (the chemists' conclusions are based upon scientific tests they conducted and their training and experience as chemists); and, (2) the opinion of one or more New York State Police investigators that the items found defendants' residences are commonly used to manufacture marijuana (the opinions are based upon interviews of confidential informants, cooperating co-defendants and the training and experience and the testifying investigators in narcotics investigations). Thus, the court is satisfied that the government has complied with its obligations under Rule 16 and defendants' motion is DENIED.

## O. Early Disclosure of Jencks Material

 Defendants request an order directing the government to produce the statements and reports of its witnesses in a timely fashion pursuant to 18 U.S.C. § 3500 ("Jencks Act"). The Jencks Act, however, provides that no statements by a government witness shall be the subject of discovery or inspection until such witness has testified on direct examination in the trial. The court cannot order the production of witness statements before the witness has testified. *United States v. Percevault,* 490 F.2d 126, 129 (2d Cir.1974). The government has offered, however, to provide Jencks materials when the trial commences. To the extent of the government's limited offer, defendants' motion is GRANTED.

*P. Disclosure of Electronic Surveillance/Thermal Imaging*

Defendants move for the disclosure of the existence of electronic surveillance, particularly the government's alleged use of thermal imaging. Although defendants insisted at oral argument that law enforcement agents used a thermal imaging device to inspect and observe defendants' property, when pressed by the court, defendants' argument was revealed to be based upon mere speculation. The government asserts that it is unaware of any electronic surveillance undertaken by investigators, but indicates that should any such evidence come to light, it will promptly produce it. Defendants' motion is DENIED without prejudice, to allow defendants to renew it should any demonstrative evidence come to light.

*Q. Preservation of Law Enforcement Notes*

Defendants next request the court to direct the government to preserve all handwritten or typed notes made in connection with this case by federal law enforcement personnel and all other state and/or local law enforcement agencies, including all records, notes, reports, videotapes, tape recordings, or any other data or memoranda relating to, incorporating, summarizing or transcribing any statements allegedly made by any co-defendant, or any co-conspirators or co-participants whether indicted or unindicted, regardless of whether such statements were exculpatory or inculpatory.

The government must permit defendants to inspect and copy the substance of any oral statement that the government intends to offer in evidence at the trial made by defendants, whether before or after arrest, in response to interrogation by any person then known to defendants to be a government agent. Fed.R.Crim.

Proc. 16(a)(1)(A). In order to fully comply with Rule 16, the government need only provide defendants with the typewritten memoranda of interviews prepared from the agent's handwritten notes. *Konefal*, 566 F.Supp. at 708.

There are, however, certain circumstances under which a defendant is entitled to receive copies of a government agent's rough notes. The Jencks Act provides that a defendant in a federal criminal trial, after a government witness has testified on direct examination, is entitled to receive for purposes of cross-examination *any* written statement of the witness in the government's possession, including handwritten notes, which relates to the subject matter as to which the witness testified. 18 U.S.C. § 3500; *United States v. Koskerides*, 877 F.2d 1129, 1133 (2d Cir.1989). Therefore, defendants are entitled to examine any notes by a government witness after the witness has testified at trial. The government relies on *Koskerides* in support of its position that rough notes are not discoverable. The government's reliance is misplaced.

In *Koskerides*, the defense was provided with typewritten memoranda of interviews prepared from handwritten notes. The handwritten notes were preserved by the agent and submitted to the district court for *in camera* inspection. The court compared the notes with the memoranda of interview and denied disclosure of the notes, finding that everything in the notes was contained in the memoranda given to the defendant. The trial court also found that the notes did not pertain to anything discussed by the agent in his testimony on direct examination. Based on those circumstances, the Second Circuit held that the district court's refusal to order disclosure of the handwritten notes did not violate the Jencks Act. *Id.* The court did not hold that handwritten notes would never

be subject to the Jencks Act. Defendants' motion is GRANTED, and the government is directed to advise the appropriate law enforcement agents to retain any rough notes pertaining to the instant case for possible disclosure at trial pursuant to the government's obligation under the Jencks Act.

### R. Providing Notice of Intent to Use Evidence At Trial

Defendants request an order directing the government to provide notice of its intent to use evidence at trial pursuant to Rule 12(d)(2) of the Federal Rules of Criminal Procedure. The government, however, submits that it has already so notified defendants via its letter to counsel dated January 31, 2003: "[p]lease consider this notice pursuant to Federal Rule of Criminal Procedure 12(d) that it is the intention of the Government to use at trial all of the evidence referred to above, including all of the evidence referenced in the discovery material provided herein." Dkt. No. 33, Government's Reply Mem. at 37. Based upon this assurance, defendants' motion is DENIED.

### S. Additional Motions for Good Cause and Further Relief

Defendants request that they be allowed to make further motions within a reasonable time prior to trial if the government produces information or evidence that requires further motions or hearings. Given that the government has provided, or soon will provide each defendant with all the information it is required to provide up to this point in time, and that it acknowledges its continuing obligation to comply with *Brady*, it is difficult to imagine what further motions a defendant would need to make. Nevertheless, the court GRANTS defendants permission, upon good cause

shown, to make further motions in advance of trial.

Defendants also move for further relief as the court may deem proper. The court perceives no need for any such further relief at this time and DENIES defendants' motion.

## II. Government's Cross-motion for Discovery

Pursuant to Rule 16(b)(1) of the Federal Rules of Criminal Procedure, the government moves for an order directing defendants to permit it to inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies of portions thereof, which are within defendants' possession, custody, or control, which they intend to introduce as evidence in chief at trial. The government also moves for an order permitting it to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the instant case, or copies thereof, within defendants' possession or control, which they intend to introduce as evidence in chief at trial or which were prepared by a witness whom defendants intend to call at the trial where the results or reports relate to that witness' testimony. The government further moves for an order directing defendants to disclose a written summary of testimony, including a description of the witnesses' opinions, the bases and rationale for those opinions, and the witnesses' qualifications, they intend to use under Rules 702, 703, and 705 of the Federal Rules of Evidence as evidence at trial. The court is unaware of any assurances by defendants that they have provided such reciprocal discovery or summarized expert testimony. Therefore, the government's motion is GRANTED in full.

## CONCLUSION

**WHEREFORE**, the court GRANTS defendants' motion to join each other's motions and all rulings set forth in this decision will apply to both defendants. The court DENIES defendants' motion for discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure without prejudice and with leave to renew if at the time of trial it appears that the government has not satisfied its obligations. The court GRANTS defendants' motion for a bill of particulars to the following extent: the government must disclose the identities of all persons the government claims to have been co-conspirators during the course of the alleged conspiracy, regardless of whether they have been indicted; the government must disclose whether any such co-conspirator is in federal, state or protective custody; and, the government must disclose the amount of controlled substance attributable to each individual defendant. The court GRANTS defendants' motion for co-conspirator statements and directs the government to disclose to each defendant all of the statements in its possession made during the course and in furtherance of the conspiracy by those defendants the government does not intend to call as witnesses at trial. The court DENIES defendants' motion for a pre-trial *James* hearing on the admissibility of co-conspirators' statements. The court DENIES defendants' motion for the disclosure of confidential informants' identities. The court DENIES defendants' motion for similar or extrinsic act evidence. The court DENIES defendants' motion for seven days' advance notice of the government's intent to offer evidence of a conviction of a crime for any of the witnesses or defendants. The court DENIES defendants' motion: (1) for production of a witness list in advance of trial; (2) a daily witness list; and, (3) a list of potential witnesses. The court RESERVES decision until the time of trial on defendants' motion for additional peremptory challenges. The court DENIES WITHOUT PREJUDICE defendants' motion for disclosure of exculpatory evidence and impeachment material. The court DENIES defendants' motions for identification evidence because the government asserts that it has already produced all identification evidence in its possession and will continue to produce such further evidence if it becomes available. The court DENIES defendants' motion to suppress all evidence derived from the search warrants executed at 323 Mellon Road, 769 Center Street, and 7834 Kneeskern Road. The court DENIES defendants' motion to dismiss the indictment. The court DENIES defendants' motion for disclosure of expert witnesses and testimony. The court GRANTS defendants' motion for the production of Jencks materials to the extent of the government's limited offer whereby the court directs the government to produce Jencks materials at the trial's commencement. The court DENIES WITHOUT PREJUDICE defendants motion for the disclosure of the existence of electronic surveillance, including thermal imaging. The court GRANTS defendants' motion for the preservation of law enforcement notes and directs the government to advise the appropriate law enforcement agents to retain any rough notes pertaining to the instant case for possible disclosure at trial pursuant to the government's obligation under the Jencks Act. The court DENIES defendants' motion for an order directing the government to provide notice of its intent to use evidence at trial pursuant to Rule 12(d)(2) of the Federal Rules of Criminal Procedure. The court GRANTS defendants' motion for

leave to file additional motions in advance of trial upon good cause shown. The court DENIES defendants' motion for further relief. The court GRANTS the government's motion for reciprocal discovery and disclosure of expert testimony.

ORDERED, that the Clerk of the Court serve a copy of this Memorandum—Decision and Order upon the parties by regular mail.

IT IS SO ORDERED.